Reginald D. WEST, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–1003–PC–213.

Court of Appeals of Indiana.

Dec. 20, 2010.

Rehearing Denied Feb. 24, 2011.

---

Reginald D. West, Carlisle, IN, Appellant pro se.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Senior Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Reginald West appeals the denial of his petition for post-conviction relief. We affirm.

### ISSUES

West raises the following issues for our review, which we restate as:

I. Whether the post-conviction court erred in determining that West was afforded effective assistance of trial counsel when counsel did not object to certain statements made by the deputy prosecutor in her closing and rebuttal statements.

II. Whether the post-conviction court erred in determining that West was afforded effective assistance of trial counsel when counsel did not call certain alibi witnesses.[1]

### FACTS AND PROCEDURAL HISTORY

The underlying facts were set forth on direct appeal:

> [A]t approximately 2:00 or 3:00 a.m. on November 3, 2002, George Cabrales, Jason and Joey Martinez, and Eric Graves were walking down Guthrie Street in East Chicago. Eric had given his white baseball hat with a blue five—point star—a symbol of the Latin Kings gang, of which Eric is a member—to Joey to wear. George, Jason, and Joey were not members of any gang.
>
> As they were walking, George, Jason, and Eric saw West and two other men. West called out to them to come across the street. They crossed the street, and West asked them, "[w]hat you be about?" Tr. p. 57–62. George and Jason heard someone say, "[o]n the G," indicating that the speaker is a member of the Gangster Disciples gang. *Id.* at 101, 156–57. George and Jason told the group that they were "neutrons," or people who are unaffiliated with any gang. West is a member of the Vice Lords gang, and the two men who were with

---

1. West refers to two additional issues in the "Argument Summary" section of his brief. However, in his "Argument" section, West fails to discuss either issue. In light of this failure, these claims are waived. *See* Indiana Rule of Trial Procedure 46.

him, Tyray McCray and Cameron Hardiman, are members of another gang, the Gangster Disciples. Apparently, the Vice Lords and the Gangster Disciples are rivals of the Latin Kings.

West pulled out a handgun, pointed it at George's face, and told the four men to take off their "stuff." *Id.* at 64, 67, 215. George took off his gym shoes and gave them to West along with his lighter. Jason gave West his shoes, his chain, and his silver Virgin Mary medallion. As Eric attempted to take off his ring, one of the men told him, "you have three seconds to get your ring off, or on the G, we're fixin' to let you have it." *Id.* at 216.

George asked West if he would let them go if they gave him everything, and West responded by firing the gun into the ground and asking the four men if they thought that he was "playing." *Id.* at 74, 139. West hit George with the gun, and George began fleeing. Eric followed. Jason was struck by a fist, and then saw Joey get shot and fall to the ground. Then Jason was also shot, falling to the ground. Jason did not see who shot him or Joey. As George and Eric fled, they heard gunshots behind them. Joey and Jason were both taken to the hospital, where Jason remained for five days. Joey died in the hospital on the day following the shooting.

After leaving the hospital, Jason went to the police station, where he viewed two photo arrays and identified West as "looking familiar" and being present on the night he was robbed. *Id.* at 152–53. Eric went to the police station to view photo arrays, but was unable to identify anyone. George went to the police station the night of the shooting and viewed photo arrays, but did not recognize anyone. George returned to the police station within the next few days to view more photo arrays, still unable to recog-

nize anyone. At a bail hearing that took place on January 24 and February 7, 2003, George identified West as the shooter, recognizing West's face as soon as he walked into the room and saw West sitting with other prisoners.

On November 27, the State charged West and McCray with murder, murder in the perpetration of a robbery, class A felony robbery, and two counts of class B felony attempted robbery. McCray entered into a plea agreement with the State in which he agreed to plead guilty to class B felony confinement with all other charges dismissed, in return for his testimony at West's trial. Hardiman was not charged for his role in the crime, but was granted use immunity for his testimony in the case pursuant to a plea agreement he entered into in an unrelated federal criminal case.

A jury trial commenced on March 22, 2004, and on March 25, 2004, the jury found West guilty of murder in the perpetration of a robbery, class A felony robbery, and two counts of class B felony attempted robbery, and not guilty of murder. On April 28, 2004, the trial court sentenced West to an aggregate sentence of eighty-nine years imprisonment.

*West v. State*, No. 45A03–0406–CR–248, 820 N.E.2d 188 (Ind.Ct.App. December 22, 2004).

West petitioned for post-conviction relief on December 9, 2005, and the State responded to the petition on January 31, 2006. West petitioned pro se for post-conviction relief on June 17, 2009, which the post-conviction court treated as a reactivation of and an amendment to the original petition. A hearing was held on the petition, which the post-conviction court subsequently denied. West now appeals.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

 A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind.2001). The post-conviction court's denial of relief will be affirmed unless the petitioner shows that the evidence "leads unerringly and unmistakably to a decision opposite" that reached by the post-conviction court. *Rowe v. State*, 915 N.E.2d 561, 564 (Ind.Ct. App.2009), *trans. denied.* A petitioner has the burden of establishing the grounds for relief by a preponderance of the evidence. Indiana Post–Conviction Rule 1(5). A petitioner is therefore in the position of appealing from a negative judgment. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).

 This court will not disturb the denial of relief unless the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion. *Carter v. State*, 738 N.E.2d 665, 671 (Ind.2000). Furthermore, this court accepts the post-conviction court's findings of fact unless they are clearly erroneous. *Bigler v. State*, 732 N.E.2d 191, 194 (Ind.Ct.App.2000), *trans. denied.* We consider only the probative evidence and reasonable inferences therefrom that support the post-conviction court's determination, and we will not reweigh the evidence or judge witness credibility. *Id.*

 In general, claims of ineffective assistance of counsel are reviewed under a two-part test: (1) a demonstration that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) a showing that the deficient performance resulted in prejudice to the defendant. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind.2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Prejudice occurs when the defendant demonstrates that there is a reasonable probability that, if not for counsel's unprofessional errors, the result of the proceeding would have been different. *Grinstead*, 845 N.E.2d at 1031. A reasonable probability occurs when there is a probability sufficient to undermine confidence in the outcome. *Id.* Failure to satisfy either prong of the two-part test will cause the defendant's claim to fail. *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). If we can easily dispose of an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient. *Id.*

## I. PROSECUTORIAL MISCONDUCT

West contends that the post-conviction court erred in determining that his counsel was not ineffective when he failed to object to certain statements made by the deputy prosecutor during closing argument. Specifically, West contends that his trial counsel was ineffective for not objecting when the deputy prosecutor called West's girlfriend, the sole alibi witness, a liar. West argues that the deputy prosecutor's comments misled the jury.

 Before addressing West's contentions, we will address the State's contention that the issue has been waived. The State argues that West failed to enter the transcript from the original proceedings into evidence and that the trial court erred in taking judicial notice of the transcript. In support of its contention, the State cites *State v. Hicks*, 525 N.E.2d 316, 317 (Ind. 1988), and related cases, for the proposition that a post-conviction court cannot take judicial notice of the transcript of evidence absent exceptional circumstances, as the transcript must be entered into

evidence in the same manner as other exhibits.

In *Hicks,* our Supreme Court held that the post-conviction court's decision to take judicial notice of prior proceedings was warranted. In so holding, the Court held that the judge "was thoroughly justified in taking judicial notice of the proceedings which in fact occurred in his court, which by a more extravagant use of judicial time would have led to the same result ... his practical handling of the situation was an economical use of judicial time and saved needless time and expense to both sides of the litigation." *Id.* at 318.

Here, the transcript of the prior proceeding had not been received from the clerk's office by the date of the post-conviction hearing. The post-conviction court, anticipating West's request to enter the transcript into evidence, a request which was indeed made soon thereafter, accepted the then-unavailable transcript into evidence with the permission of both West and the State. Following the lead of our Supreme Court in *Hicks,* we recognize that the post-conviction court was justified in taking judicial notice of the transcript under the exceptional circumstances before the court. Thus, we turn to the merits of the issues.

In the findings of fact and conclusions of law that accompanied the denial of West's petition, the post-conviction court determined that West did not indicate "upon what legal basis such an objection would be based." Appellant's App. p. 141. The post-conviction court further determined that "the State's comments were responsive to the defense arguments. Prosecutors may respond to statements or topics raised by the defense even if the responsive comments would otherwise be objectionable." *Id.* (citing *Cooper v. State,* 854 N.E.2d 831, 836 (Ind.2006)). The post-conviction court concluded that "trial coun-

sel's failure to object did not fall below prevailing professional norms. [Thus,] [t]rial counsel's failure to object did not constitute ineffective assistance of counsel." *Id.*

When an ineffective assistance of counsel claim is based on the failure to make an objection, the petitioner must show that a proper objection would have been sustained by the trial court. *Lambert v. State,* 743 N.E.2d 719, 734 (Ind. 2001). In his closing argument, West's counsel asserted that only West and his girlfriend could testify as to his whereabouts at the time the felony murder and robberies took place, as they were at home and in bed. In response, the prosecutor argued that West's own testimony indicated that others saw him that evening close to the time of the crimes, yet they did not come forward to testify to that fact. The prosecutor also stated that only West's girlfriend, who was the mother of his child and thus had a strong motive to keep him out of jail, would testify and lie for him. The prosecutor was entitled to refute West's interpretations of the facts and the stated reasons for his trial strategy. Thus, the post-conviction did not err in relying on *Cooper* in determining that an objection would have been denied.

## II. ALIBI WITNESSES

West contends that the post-conviction court erred in determining that his trial counsel was not ineffective when he decided not to call certain alibi witnesses. Defense counsel is required to perform adequate pretrial investigation and preparation, including interviewing both prosecution and defense witnesses. *Badelle v. State,* 754 N.E.2d 510, 538 (Ind. Ct.App.2001). When trial counsel does not interview possible alibi witnesses for the defendant, we apply the *Strickland* two-part test to determine whether trial coun-

sel's actions fall below an objective standard of reasonableness based on prevailing norms and to determine whether counsel's performance resulted in prejudice. *Clayton v. State*, 658 N.E.2d 82, 84–85 (Ind.Ct. App.1995).

In its findings of fact and conclusions of law that accompanied the denial of West's petition, the post-conviction court determined that trial counsel made a strategic decision not to call two alleged alibi witnesses because their testimony "would harm rather than help his client." Appellant's App. p. 139. The post-conviction court further determined that trial counsel's "decision to forgo presenting testimony from the [alleged alibi witnesses] was a tactical one based on an evaluation of what they were able to contribute to the defense case. Furthermore, [West] has presented no evidence of what the [alleged alibi witnesses] would have said had they testified." Appellant's App. p. 141. The post-conviction court concluded that "there is no evidence that the omission of their testimony at trial prejudiced [West] . . . [and] counsel was not ineffective in declining to use the [witnesses'] testimony." *Id.*

Our review of the post-conviction transcript discloses that trial counsel remembered that he had either spoken with or heard information about the alibi witnesses' activities on the day of the felony murder and burglaries. Trial counsel determined that the witnesses' testimonies would not provide assistance to West, as the evidence that the witnesses could have given did not coincide with the period of time testified to as alibi evidence by West and his girlfriend. Moreover, trial counsel believed that the potential witnesses' testimonies did not coincide with each other. On the basis of these beliefs, trial counsel decided not to call the witnesses. He explained that discrepancies in the alibi evidence would have a strong negative effect on the jury. We will not second guess trial counsel's strategy. Therefore, we affirm the post-conviction court's determination on this issue.

West emphasizes that the witnesses testified at the post-conviction hearing that they had not talked to West's trial counsel and that they would have "verified the truth" of the trial testimony of West and his girlfriend. We will not reweigh the evidence or assess the credibility of witnesses.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.