**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 30 2014, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**SCOTT KING**
**RUSSELL W. BROWN, JR.**
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KUFANYO BROOKS, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 79A02-1403-PC-154 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1111-PC-16

**September 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On August 16, 2007, Appellant-Petitioner Kufanyo Brooks was charged with two counts of Class A felony dealing in cocaine and one count of Class B felony possession of cocaine. Brooks proceeded to a jury trial on April 1, 2008. After the completion of the presentation of evidence, the jury reported to the trial court that they were unable to reach a unanimous decision on the first of the two counts of Class A felony dealing in cocaine. The jury, however, reached a unanimous guilty verdict on the remaining Class A felony charge and the Class B felony possession charge. The trial court subsequently sentenced Brooks to an aggregate term of thirty years. Brooks's convictions and sentence were affirmed on direct appeal.

Brooks subsequently sought post-conviction relief, claiming that he had received ineffective assistance of trial counsel. The post-conviction court denied Brooks's request for relief following an evidentiary hearing. On appeal, Brooks contends that the post-conviction court erroneously determined that he did not receive ineffective assistance from his trial counsel. Upon review, we affirm the judgment of the post-conviction court.

**FACTS AND PROCEDURAL HISTORY**

Our opinion in Brooks's prior direct appeal, which was handed down on February 20, 2009, instructs us as to the underlying facts and procedural history leading to this post-conviction appeal:

> The facts favorable to the convictions are that twice on July 3, 2007, Brooks sold cocaine to a confidential informant (CI) while at his (Brooks's) residence in Lafayette, Indiana. The first buy took place at about 12:33 a.m., when the CI gave Brooks $100 for what they agreed would be a gram of cocaine.

Nearby police officers monitored the transaction via an audio wire concealed on the CI. After the transaction was completed and the CI rendezvoused with police, it was determined that Brooks had delivered less than half a gram of cocaine, so another purchase was arranged. Following the same procedure as before, the CI traveled to Brooks's house, this time receiving a gram of cocaine in exchange for $50. The location of the drug buys was within 1000 feet of a family housing complex.

The CI later picked Brooks's photo from a photo array and Brooks was charged under Counts I and II with dealing in cocaine as class A felonies, and under Count III with possession of cocaine as a class B felony.

*Brooks v. State*, 79A02-0806-CR-560 *1 (Ind. Ct. App. February 20, 2009).

During trial, the CI testified that he had known Brooks for seven or eight years prior to the night of the controlled buys and that he referred to Brooks by the nickname of "Fuzz." Trial Tr. p. 119. The CI further testified that Brooks lived off of New York Street, which is consistent with the location where the CI purchased the cocaine from Brooks. The CI's trial testimony was largely corroborated by the testimony of four law enforcement officers who either observed or participated in the controlled buys. Brooks's trial counsel attempted to attack the CI's credibility during cross-examination. Specifically, Brooks's trial counsel elicited testimony from the CI indicating that he had previously been convicted for false informing and that the basis for this conviction was that he had lied to the authorities. Brooks's trial counsel did not call Rachelle Billups, whom Brooks claimed could provide him with an alibi, as a defense witness during trial.

After the completion of the presentation of evidence, the jury reported to the trial court that they were unable to reach a unanimous decision on the first of the two counts of Class A felony dealing in cocaine. The jury, however, reached a unanimous guilty verdict on the

remaining Class A felony charge and the Class B felony possession charge.

> At the conclusion of the sentencing hearing, the court found as mitigating factors that (1) Brooks has family support, (2) the crime neither caused nor threatened serious harm to persons or property, (3) Brooks's imprisonment would result in hardship to his dependents, and (4) he is remorseful. As aggravating circumstances, the court found that (1) Brooks has a history of criminal or delinquent behavior, (2) he violated the conditions of his parole, and (3) there were children present during at least one of the crimes. Upon its conclusion that the aggravators and mitigators balanced, the court sentenced Brooks to the advisory sentence of thirty years for the dealing conviction and ten years for the possession conviction, to be served concurrent with each other but consecutive to a sentence imposed in a case involving a separate conviction.

*Brooks*, 79A02-0806-CR-560 *1. Brooks's convictions and sentence were subsequently affirmed on direct appeal. *Id*. at *2-3.

On November 14, 2011, Brooks filed a *pro se* petition for post-conviction relief ("PCR"). On October 9, 2013, Brooks, by counsel, filed an amended PCR petition, which alleged that Brooks had received ineffective assistance from his trial counsel. The post-conviction court conducted an evidentiary hearing on Brooks's amended PCR petition on October 31, 2013. During this hearing, Brooks, by counsel, presented argument and witness testimony in support of his ineffective assistance claim. On February 18, 2014, the post-conviction court issued an order denying Brooks's request for PCR.

## DISCUSSION AND DECISION

Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds

4

enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

### Whether the Post-Conviction Court Erred in Determining that Brooks Did Not Receive Ineffective Assistance of Trial Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment

5

recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the

6

proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

Brooks challenges the post-conviction court's determination that he did not receive ineffective assistance of trial counsel. In raising this challenge, Brooks claims that his trial counsel failed to interview Billups (whom Brooks claimed would provide him with an unequivocal alibi), to file a notice of alibi, and to call Billups as a defense witness at trial. Brooks argues that trial counsel's alleged failure to interview Billups "fell below an objective standard of reasonableness." Appellant's Br. p. 11. Upon reviewing a claim that trial counsel did not interview a possible available alibi witness, "we apply the *Strickland* two-part test to determine whether trial counsel's actions fall below an objective standard of reasonableness based on prevailing norms and to determine whether counsel's performance resulted in prejudice." *West v. State*, 938 N.E.2d 305, 310-11 (Ind. Ct. App. 2010), *trans. denied*.

With regard to the first prong, Brooks asserts that trial counsel's performance was deficient because Billups allegedly would have given him an alibi, testifying that Brooks was not home at the time of the second controlled buy. During the post-conviction proceedings, Billups indicated that she would have testified at trial that Brooks had loaded the couple's five young children and his nineteen-year-old brother into the family vehicle and had picked

7

her up from work at 1:00 a.m. Billups indicated that she would also have testified that she then drove the family to the grocery store, where they bought food for a Fourth of July cookout before returning home at approximately 2:30 a.m., or after the second controlled buy had allegedly occurred. Billups, however, had no corroborating evidence to support her version of the facts, and the times provided by Billups would have contradicted the times provided by Brooks during his trial testimony regarding his and Billups's actions on the night in question.

The record demonstrates that while trial counsel may not have officially interviewed Billups, trial counsel was aware of the nature of Billups's proffered testimony. At some point, trial counsel determined that she was not going to call Billups as a witness because she had "suspicions" about Billups's credibility. Tr. p. 72. The record reveals that trial counsel notified Brooks on February 7, 2008, that she

> would no longer speak with Rachelle Billups about your case. She continues to be rude and abusive during our telephone calls and she recently left several rude, abusive and inappropriate voice mail messages at my office—I've saved all the messages. I will no longer subject myself to her abusive tirades.

Petitioner's Ex. 4. In addition, the post-conviction record demonstrates that Billups was interviewed by a member of trial counsel's staff. Trial counsel reviewed this interview. While trial counsel had initially included Billups as a potential defense witness, trial counsel did not file a notice of alibi because she determined that Billups's proffered testimony would not be beneficial to the theory of defense. Further, review of the record demonstrates that Billups's proffered testimony would have been in conflict with the corroborated testimony of

8

the CI and the testimony of one of the law enforcement officers who was involved with the controlled buy, which indicated that the vehicle that Billups claimed that she and Brooks were driving was parked in front of Billups's and Brooks's residence during the relevant time period.

In determining that trial counsel did not provide ineffective assistance by failing to interview and call Billups as a witness at trial, the post-conviction court found that the proffered alibi was "extremely implausible" and dubious for a number of reasons, explaining as follows:

> The vehicle which was allegedly used to transport all of the occupants of the household first to Ms. Billups's employment and then to the store was parked in front of the residence during the period it was allegedly being used for that purpose. The five little children were dragged out in the middle of the night when [Brooks's] 19-year old brother would have been available to babysit for them. [Brooks] was not arrested until nearly two months after the event in question, so it is dubious that either he or Ms. Billups could remember precisely that evening and precisely those times that they were in the car and at the PayLess. The tape of the second transaction had the voices of children on it, so the alibi as to the second count was dubious. Also, [Brooks] could not identify anybody else who might have been the dealer with respect to the second transaction, which took place inside of his residence.

Appellant's App. p. 106. In light of the implausible and dubious nature of Billups's proffered alibi testimony, the post-conviction court determined that trial counsel's strategy of attempting to show that the CI was unreliable was a more promising strategy than the strategy of attempting to show that Brooks, Billups, and the children were not present in their home at the time of the second transaction.

Upon review, we agree with the determination of the post-conviction court and

9

conclude that trial counsel's decision to forgo presenting the alleged, seemingly implausible alibi testimony from Billups was a tactical decision based on trial counsel's evaluation of Billups's credibility and of the effect that Billups's testimony would have on Brooks's defense. We also agree with the post-conviction court that trial counsel's attempt to attack the CI's credibility was a sound strategy. We will not second guess trial counsel's tactical decisions and strategy in this regard.[1] Accordingly, we conclude that Brooks has failed to show how his trial counsel's actions in this regard fell below an objective standard of reasonableness.

Further, we note that Brooks's reliance on the United States Court of Appeals for the Seventh Circuit's opinion in *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003), is misplaced, as the court's opinion in *Hampton* can easily be distinguished from the instant matter. In *Hampton*, eyewitness testimony was "the linchpin" of the State's case against the defendant. 347 F.3d at 249. There was no physical evidence tying the defendant to the attack on the victims. *Id*. at 350. None of the three eyewitnesses called to testify by the State who identified the defendant as an assailant knew the defendant, and none of those three witnesses had more than a momentary glimpse of the assailant whom they identified as the defendant. *Id*. The eyewitnesses "got that look under conditions that were anything but ideal: the attack was chaotic and perpetrated by a large group of people, and the house lights in the Amphitheatre had been dimmed for the concert." *Id*. "Moreover, by their

---

[1] We find it noteworthy that trial counsel's strategy and tactical decisions successfully raised reasonable doubt as to the first Class A felony charge.

10

own account, none of the witnesses had, prior to seeing a line-up, provided a physical description of the assailant they identified as [defendant] to the authorities." *Id*. The Court noted that opposing testimony from other eyewitnesses to the attacks, suggesting that the defendant was not a participant, would have given the jury a qualitatively different and more powerful reason to believe that the State's witnesses were mistaken in their identification of the defendant. *Id*. The record further reveals that "there were such exculpatory eyewitnesses available to the defense." *Id*. at 251. In finding that the defendant's trial counsel provided ineffective assistance by failing to interview these additional exculpatory eyewitnesses, the Court noted that there was no reason not to contact and interview the other eyewitnesses as the other eyewitnesses were not "implicated in the attacks, nor did they suffer from any other disability that necessarily would have impaired their credibility in the eyes of the jury." *Id*.

Here, unlike the eyewitnesses presented by the State in *Hampton*, the CI had known Brooks for seven or eight years prior to the night of the controlled buys. The CI was familiar with where Brooks lived and referred to Brooks by a nickname. The CI's testimony regarding the controlled buys was corroborated by four different law enforcement officers who either observed or participated in the controlled buys. The CI's testimony was also corroborated by other evidence against Brooks, including an audio recording that was made during the second controlled buy. In addition, unlike the seemingly credible additional eyewitnesses in *Hampton*, Brooks's trial counsel had concerns about Billups's credibility and the potentially detrimental effect that her testimony might have on the defense.

With regard to the second prong, Brooks claims that he demonstrated prejudice. We

11

cannot agree. Again, the record demonstrates that the CI testified to the circumstances surrounding his purchase of cocaine from Brooks. Brooks's trial counsel successfully raised reasonable doubt as to whether Brooks committed one of the charged offenses, as is evidenced by the jury's failure to reach a unanimous verdict on the first Class A felony charge. Further, although Brooks's trial counsel attempted to challenge the CI's credibility, the CI's testimony was corroborated by the testimony of four law enforcement officers. The CI's corroborated testimony was in conflict with Brooks's trial testimony and would have been in conflict with Billups's proffered testimony if Billups had been called as a witness during trial. In addition, Brooks's trial counsel indicated that she had concerns about Billups's credibility, which likely would have been attacked by the prosecution if Billups had been called as a witness during trial. In light of the fact that the CI's corroborated testimony would have been in conflict with Billups's proffered testimony coupled with the fact that trial counsel had seemingly legitimate pre-trial concerns about whether Billups would make a credible witness during trial, we cannot say that there is a reasonable probability that, but for trial counsel's alleged error, the result of the proceedings would have been different. *See Reed*, 866 N.E.2d at 769.

## CONCLUSION

In sum, we conclude that the post-conviction court did not err in determining that Brooks failed to establish that he suffered ineffective assistance from his trial counsel. Accordingly, we affirm the judgment of the post-conviction court.

The judgment of the post-conviction court is affirmed.

12

BARNES, J., and BROWN, J., concur.