## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 24 2015, 9:49 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Thomas W. Vanes | Gregory F. Zoeller |
| Office of the Public Defender | Attorney General of Indiana |
| Crown Point, Indiana | |
| | Jesse R. Drum |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Lorenzo Walton, | April 24, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 45A03-1409-CR-320 |
| v. | Appeal from the Lake Superior Court. |
| | The Honorable Diane Ross Boswell, Judge. |
| State of Indiana, | Cause No. 45G03-1207-FA-18 |
| *Appellee-Plaintiff.* | |

**Barteau, Senior Judge**

# Statement of the Case

Corey Lorenzo Walton appeals his convictions by jury of attempted murder,[1] a Class A felony, and attempted robbery,[2] a Class A felony. We affirm.

# Issues

Walton raises two issues, which we restate as:

    I.      Whether the State's comments to the jury during closing arguments resulted in fundamental error.

    II.     Whether the evidence is sufficient to support Walton's conviction for attempted murder.

# Facts and Procedural History

On the afternoon of July 16, 2012, Henry Walker went to a public park in Hammond, Indiana. Walton arrived at the park shortly after Walker. Walton wore a black shirt, shorts, and an "ankle bracelet." Tr. p. 108. Walton greeted several people, including Walker, who shook his hand.

Walker sat at a table and listened to music on his headphones for twenty minutes. Next, Walton approached him, brandishing a handgun. Walton pointed the gun at Walker's chest and told Walker to "give him everything." *Id.* at 103.

---

[1] Ind. Code §§ 35-41-5-1 (1977), 35-42-1-1 (2007).

[2] Ind. Code §§ 35-41-5-1, 35-42-5-1 (1984).

[5] Walker grabbed the gun and pushed it down and away from his chest. After a short struggle, Walton stepped back from Walker and shot him twice. Walton fled, and Walker returned to his home, where he discovered he had been shot in the groin and the hip. Walker was taken to the hospital, where he stayed for a week. Doctors removed one of his testicles as a result of the shooting.

[6] Walker identified Walton in a photographic lineup. The State charged Walton with attempted murder, attempted robbery, and battery. Prior to trial, Walton filed a motion in limine, asking the trial court to bar any evidence related to Walton wearing an "ankle bracelet" at the time of the crime. Appellant's App. p. 49. During a pretrial hearing, the parties and the trial court clarified that the bracelet was a monitoring device. The trial court ruled, "the person who actually saw the ankle bracelet can testify about the ankle bracelet if they actually saw [it]." Tr. p. 13. At trial, Walker testified without objection that Walton wore an ankle bracelet during their encounter. *Id.* at 108.

[7] A jury determined that Walton was guilty as charged. The trial court merged the battery conviction with the attempted murder conviction and sentenced him accordingly. This appeal followed.

# Discussion and Decision

## A. Closing Arguments and Fundamental Error

[8] During closing arguments, the State twice referred to Walton wearing a "monitor" during his encounter with Walker. *Id.* at 219. Walton argues that the prosecutor's comments were an impermissible reference to Walton's

criminal history that unfairly prejudiced him in the eyes of the jury and amounted to prosecutorial misconduct. He explains that Walker's use of the word "bracelet" was ambiguous and could have referred to jewelry, but the State's use of the word "monitor" was more indicative of a criminal record.

[9] Walton concedes that he did not argue at trial that the prosecutor's comments were unfairly prejudicial. A defendant waives a claim of prosecutorial misconduct for appellate review by failing to object in the trial court. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). When a claim of prosecutorial misconduct is waived but the defendant intends to present it on appeal despite waiver, the defendant must establish not only the grounds for prosecutorial misconduct but also that the misconduct constituted fundamental error. *Id.* at 667-68.

[10] In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

[11] Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged error is so prejudicial to the defendant's rights as to make a fair trial impossible. *Ryan*, 9

N.E.3d at 668. Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide second bites at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error. *Id.*

[12] To establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred by not raising the issue *sua sponte* because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. *Id.* In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Id.*

[13] During closing arguments, the prosecutor told the jury:

> Prosecutor: So you—again, you're back to who did it. [Walker] picked Corey out of the lineup. He pointed Corey out during the trial. He also indicated that Corey had on a monitor. Now, you can take all of these facts and reason as you get back there and study the evidence and what you choose to believe and make certain conclusions. You can reason your way to how many people fit his description as running through the park at 67th and-
>
> Detective Schmidt: -Grand.

Prosecutor: -Grand with the monitor on, probably not many. He was probably accurate in the person that he picked out who shot him.

Tr. pp. 219-20.

[14] At trial, Walton's defense was that he was not the shooter. The prosecutor was entitled to refute Walton's interpretations of the facts and comment on the evidence. *See West v. State*, 938 N.E.2d 305, 310 (Ind. Ct. App. 2010) (prosecutor did not commit misconduct by calling a defense witness a liar during closing argument), *trans. denied*. Walker testified at trial without objection that Walton had worn an ankle bracelet. In addition, during a pretrial hearing Walton agreed that, in the context of testimony by potential State's witness Dominique Cross, Walton's ankle monitor could be "an issue of identification." Tr. p. 5. Under these circumstances, the prosecutor's comments about Walton's ankle monitor were a permissible comment on the evidence rather than an attempt to place impermissible evidence in front of the jury or to inflame the jury's prejudices. *See Wrinkles v. State*, 749 N.E.2d 1179, 1197 (Ind. 2001) (prosecutor's description of defendant as a "psychopath" and "sociopathic" were fair comments on the evidence because evidence showed that defendant had been diagnosed with multiple mental illnesses). Walton has not demonstrated prosecutorial misconduct or fundamental error.

## B. Sufficiency of the Evidence for Attempted Murder

[15] Walton argues that the State failed to prove that he intended to kill Walker. In considering challenges to the sufficiency of the evidence, we neither reweigh the

evidence nor judge witness credibility. *Kiplinger v. State*, 922 N.E.2d 1261, 1266 (Ind. 2010). Instead, we consider only the evidence supporting the judgment and any reasonable inferences drawn from the evidence. *Tin Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014). We affirm a conviction unless no reasonable trier of fact could find every element proved beyond a reasonable doubt. *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014).

[16] To convict Walton of attempted murder, the State was required to prove beyond a reasonable doubt that Walton took a substantial step toward intentionally killing Walker. Ind. Code §§ 35-41-5-1, 35-42-1-1. The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. Discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. *Id.*

[17] Walton argues that the evidence does not establish his intent to kill Walker because he "fired shots into Walker's lower body," Appellant's Br. p. 5, which he claims shows only an intent to wound. We disagree. Walton pointed his gun directly at Walker's chest and instructed Walker to give him everything. After a struggle, Walton broke free and discharged his weapon at Walker, striking him in his lower torso, specifically his groin and his hip. The shots, if left untreated, were likely to cause death or great bodily injury. Walker was hospitalized for a week after the shooting and doctors removed one of his testicles. This is ample evidence from which a jury could have inferred intent to

kill beyond a reasonable doubt. *See Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000) (evidence that defendant fired handgun at victim at close range sufficient to establish intent to kill), *trans. denied*.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Friedlander, J., and Riley, J., concur.