## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2020, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DeShawn Lamont Luten,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 31, 2020

Court of Appeals Case No.
19A-CR-1488

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1811-F3-84

**Barteau, Senior Judge.**

# Statement of the Case

DeShawn Luten appeals his conviction by jury of armed robbery, a Level 3 felony.[1] We affirm.

# Issue

Luten raises one issue, which we restate as: whether Luten received ineffective assistance of trial counsel.

# Facts and Procedural History

On the night of November 19, 2018, Markus Schoebrl was walking home after going out for dinner. As he walked toward his apartment, a person passed him going in the other direction. Next, Schoebrl felt someone shove him on his backpack and the back of his head. He turned around and saw the person who had just walked by him. The person told Schoebrl, "Give me everything what [sic] you have." Tr. Vol. 2, p. 53.

At trial, Schoebrl described his assailant as a man wearing pants, a hooded sweatshirt, and a jacket, with the hood pulled up. All of his clothes were dark. Furthermore, the assailant had "a specific kind of nose," *id.* at 54, with distinctive eyes and a beard. In court, Schoebrl identified Luten as the man that

---

[1] Ind. Code § 35-42-5-1 (2017).

detained him, explaining that he was "always looking" at Luten's face during their encounter, except when he was looking at his wallet. Tr. Vol. 2, p. 76.

[5] Schoebrl was surprised by being accosted, so he hesitated to respond. Next, Luten pulled out a handgun and pointed it at Schoebrl. The gun was a revolver and shined in the light.

[6] Schoebrl took out his wallet, but before handing it over he removed his ID and credit card, leaving about fifty dollars inside. Next, a car drove by, and Luten turned away from the street to hide his gun. After the car passed by, Luten turned back to Schoebrl and demanded his mobile phone. Schoebrl complied.

[7] Luten also demanded Schoebrl's backpack. Another car drove by, and Luten turned away from the street and Schoebrl. Schoebrl took the opportunity to run away, dodging between parked cars as he went home.

[8] When Schoebrl arrived at his apartment, he contacted the police. He subsequently spoke with several officers, including Detective Devon Gilbert of the South Bend Police Department (SBPD). Schoebrl described his assailant. At that time, he described Luten as "white" because Luten had light skin. As Schoebrl later explained, "I was thinking about just giving color and not the ethnicity." *Id.* at 58. He also gave the officers the serial number for his phone.

[9] Later, Gilbert examined online databases where participating businesses post information about electronics and other items that they have purchased. A company named ecoATM reported that a phone with the serial number

identified by Schoebrl had been sold at one of its kiosks in Saint Joseph County on the morning of November 20, 2018.

[10] EcoATM's kiosks are fully automated, and they give customers money in exchange for cellular phones. The kiosk at issue in this case takes photographs of the purchased phones and notes the date and time of each transaction. In addition, the kiosk takes photographs of phone sellers and requires them to provide their name, date of birth, address, and a thumbprint.

[11] Gilbert contacted ecoATM, and the company sent him information about the seller of Schoebrl's phone. EcoATM's information demonstrated that Luten was the seller. Next, the police asked Schoebrl to review a photographic array. We discuss the process in more detail below, but Schoebrl identified Luten as the person who took his wallet and phone.

[12] On November 29, 2018, the State charged Luten with armed robbery, a Level 3 felony. The trial court presided over a jury trial on March 26, 2019. Among other evidence presented at trial, the State discussed the photographic line-up that the police had shown to Schoebrl. In addition, Schoebrl identified Luten in court as the man who robbed him. The jury determined Luten was guilty. The court subsequently imposed a sentence, and this appeal followed.

## Discussion and Decision

[13] Luten argues he received ineffective assistance of counsel, and is entitled to a new trial, because counsel failed to object to the admission into evidence of a photographic line-up and an in-court identification.

[14] A defendant must prove two components to establish a violation of the Sixth Amendment right to effective assistance of counsel: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) the deficient performance prejudiced the defendant to the extent that, but for counsel's errors, the result of the proceeding would have been different. *Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008). Prejudice occurs when the defendant demonstrates that there is a reasonable probability that, if not for counsel's unprofessional errors, the result of the proceeding would have been different. *West v. State*, 938 N.E.2d 305, 309 (Ind. Ct. App. 2010), *trans. denied*.

[15] Failure to satisfy either component of the two-part test will cause the defendant's claim to fail. *Id.* If we can dispose of an ineffective assistance claim based upon the prejudice component, we may do so without addressing whether counsel's performance was deficient. *Id.* To succeed on a claim that trial counsel was ineffective for failure to raise an objection, the defendant must demonstrate that if an objection had been made, the trial court would have had no choice but to sustain it. *Little v. State*, 819 N.E.2d 496, 506 (Ind. Ct. App. 2004), *trans. denied*.

[16] There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002). Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. *Id.* at 746-47. Isolated mistakes,

poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* at 747.

[17] In *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968), the Supreme Court noted that a victim's identification of a suspect by photograph presents certain "hazards," but the Court was unwilling to prohibit the technique. Instead, the Court determined: "[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* The Indiana Supreme Court has stated, "In order to determine whether evidence of a pre-trial identification should have been excluded, this court looks to the totality of the circumstances to determine whether the identification process was conducted in such a way that it created a substantial likelihood of irreparable misidentification." *Heiman v. State*, 511 N.E.2d 458, 459 (Ind. 1987).

[18] In this case, on November 21, 2018, two days after the robbery, detectives asked Schoebrl to examine a photographic array. Schoebrl had previously described his assailant as white, which he meant as describing skin color rather than identifying ethnicity. Gilbert subsequently received information from ecoATM about Luten and prepared a photographic array consisting of African-Americans.

[19]  Gilbert explained at trial that the SBPD's process for photographic arrays is intended "to eliminate any kind of bias or any kind of persuasion" by officers directed at witnesses. Tr. Vol. 2, p. 91. Officers give witnesses a standard sheet of instructions, which includes a statement that the "person you saw may or may not be in the photographs you're about to view." *Id.*

[20]  Before the presenting the array, police officers gave the standard instructions to Schoebrl. Gilbert further told Schoebrl that if he did not recognize anyone in the array, he needed to inform the officers accordingly. In addition, Gilbert told Schoebrl that the police had found his phone and "they had found a suspect." Tr. Vol. 2, p. 68, 93. Schoebrl understood that statement to mean that the suspect would be included in the lineup, but Gilbert did not tell Schoebrl the suspect was included in the lineup.

[21]  An officer showed Schoebrl six eight-by-ten photographs. Gilbert observed Schoebrl from another room. Schoebrl identified Luten in the lineup, stating his degree of certainty was "7" out of ten. *Id.* at 72. Next, the officer left the room, and Gilbert entered. He told Schoebrl, "Nice job," and "You did well." Tr. Vol. 2, p. 109.

[22]  Luten argues that Gilbert should not have told Schoebrl that the police had a suspect. But we note that, regardless of how Schoebrl interpreted Gilbert's statement, Gilbert did not tell Schoebrl that the suspect would be included in the array. Further, the standard instructions informed Schoebrl that the person he had seen might not be included in the array. Even if Gilbert had told

Schoebrl that a photograph of the suspect would be included in the array, that factor is insufficient to establish undue suggestibility. *See Petro v. State*, 455 N.E.2d 332, 334 (Ind. 1983) (officer informing victim that a suspect was included in an array did not demonstrate the process led to irreparable misidentification).

[23] In addition, Gilbert instructed Schoebrl that if he did not recognize anyone in the array, Schoebrl had to inform the officers. Finally, even though Gilbert congratulated Schoebrl after the fact, he did not specifically tell Schoebrl that he had identified Luten. Under the totality of the circumstances, the photographic array procedure did not create a substantial likelihood of irreparable misidentification. *See Hollonquest v. State*, 272 Ind. 380, 383, 398 N.E.2d 655, 657 (1979) (no error in admitting evidence from photographic identification, even though the officer told the witness, "see if you recognize [the suspect]" while handing the witness an array of photographs).

[24] As for the discrepancy between Schoebrl's initial identification of his assailant as white, and Gilbert's photographic array of African-American men, in *Parsley v. State,* 557 N.E.2d 1331, 1334 (Ind. 1990), the Indiana Supreme Court stated: "[W]hen the individuals in a lineup resemble each other[,] the fact that the witness' initial description was somewhat different does not suggest to the

witness which of the people in the lineup he should identify." It was not error to admit evidence of Schoebrl's identification of Luten at trial.[2]

[25] If Luten had objected to the admission of evidence related to the photographic array and Schoebrl's in-court identification, the objection would not have been sustained under the Indiana Supreme Court's precedent. Having failed to show prejudice resulting from counsel's failure to object, we conclude Luten's claim of ineffective assistance of trial counsel must fail.

## Conclusion

[26] For the reasons stated above, we affirm the judgment of the trial court.

[27] Affirmed.

Baker, J., and Vaidik, J., concur.

---

[2] The parties dispute whether, even if the photographic array process was impermissibly suggestive, there was sufficient independent evidence to support the admission into evidence of Schoebrl's in-court identification of Luten. We need not address this issue.