Travis JOHNSON, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 71A03–0809–CR–459.

Court of Appeals of Indiana.

March 6, 2009.

---

David W. Newman, William P. Stanley & Associates, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Travis Johnson appeals his conviction for Carrying a Handgun Without a License, as a Class C felony, following a jury trial. He presents two issues for our review:

1. Whether the Prosecutor committed prosecutorial misconduct when, during trial, she repeatedly referred to Johnson's post-arrest request for an attorney.
2. Whether Johnson was denied the effective assistance of trial counsel.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 14, 2007, Corporal Aaron Brick and Corporal David Johnson, officers with the South Bend Police Department, were on patrol in South Bend when they heard several gunshots. When the officers drove to a nearby location to investigate, they observed a man standing next to a house, holding a bottle in one hand and a handgun in the other hand. The officers approached the man, later identified as Johnson, and ordered him to drop the gun. Johnson did not comply and pointed the gun at Corporal Brick, who was standing approximately six to eight feet away from Johnson. Corporal Johnson, who was standing approximately ten to fifteen feet away from Johnson, drew his weapon in defense of Corporal Brick, but Johnson ran away before any shots were fired.

The officers pursued Johnson on foot and caught up with him approximately fifteen minutes later. Another officer had apprehended Johnson, and Corporal Brick and Corporal Johnson met up with them to identify Johnson, who no longer had a gun in his possession. As the officers placed Johnson into the back of a patrol car, Johnson volunteered, "I've got a lawyer."[1] Transcript at 530. While being interviewed at the police station, Johnson told the officers that members of a gang had driven by his house, "shot up his car and hit one of his friends." Transcript at 382. But when asked whether he had possessed a gun, Johnson asked to see his attorney.

The State charged Johnson with carrying a handgun without a license, as a Class C felony; criminal gang activity, a Class D felony; carrying a handgun without a license, as a Class A misdemeanor; and resisting law enforcement, as a Class A misdemeanor. The State dismissed the criminal gang activity charge prior to trial. Following a jury trial, Johnson was convicted of resisting law enforcement, but the jury was hung on the handgun charges. During a second trial on the handgun charges, the jury found Johnson guilty of carrying a handgun without a license, and Johnson admitted to having a prior conviction for carrying a handgun without a license, which enhanced the offense to a Class C felony. The trial court entered judgment and sentence accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Prosecutorial Misconduct

█ Johnson contends that the Prosecutor committed misconduct during trial when she repeatedly referred to Johnson's

---

1. The parties indicate that Johnson had been Mirandized at that point.

invocation of his right to an attorney. Johnson asserts that those references constituted *Doyle* violations. In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that it is improper to use, for impeachment purposes, a defendant's silence at the time of arrest and after receiving *Miranda* warnings. Because Johnson did not object to any of the alleged misconduct at trial, he contends that it constitutes fundamental error. For prosecutorial misconduct to be fundamental error, it must be demonstrated that the prosecutor's conduct subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Hancock v. State,* 737 N.E.2d 791, 798 (Ind.Ct.App.2000).

■ Here, during trial, the Prosecutor referred to Johnson's invocation of his right to an attorney at least six times. Johnson did not object to any of the references. But during the State's closing argument, the trial court interrupted the Prosecutor after she made the following remarks:

> Ladies and gentlemen, somebody came to his house and somebody shot at his car. And what's the best way, the most direct way to get revenge? When you go grab a gun and you get on it and you take care of it. Does that make sense to you? It makes a lot more sense than the defendant's story about being so scared and covering up for [his friend]. And remember the words, "I got [sic] a lawyer." Okay. Well, according to you, you're just a victim of a crime, you've done nothing wrong here. Who cares? Why do we even care? *You need a lawyer when you know you've done something wrong.*

Transcript at 528 (emphasis added).

At that point, the trial court convened a side bar conference and recessed the jury, and the following colloquy took place:

COURT: We're way over the edge here on this lawyer stuff, we need to take a break.

* * *

COURT: During the course of I believe Officer Brick's testimony, there was testimony on direct examination that Mr. Johnson was at the police station, he was questioned about the incident, and at some point and time [sic] during the questioning he indicated that he wanted a lawyer. And as a result, the questioning stopped.

I winced a little bit, when I heard that, because I think that's improper.

There was on the tape Mr. Johnson saying, "I've got a lawyer." Mr. Johnson was clearly in custody at the time. There was no objection to either of that bit of evidence coming out.

Mr. Johnson was again asked on cross-examination by the prosecutor about that very fact, about having a lawyer. Which to me . . . well, then again no objection.

Then . . . in the opening stage of the State's final argument, twice Ms. Cressy you emphasized those words, "I've got a lawyer," and also put it up on the screen. And there was no objection at this point. Quite honestly, those could be seen as going either way, and maybe a jury wouldn't really even care one way or the other.

Then as you were getting to your closing portion or rebuttal portion of the argument, however, you were clearly in my mind headed toward the idea that Mr. Johnson had an opportunity to tell the police what had happened, and if he wasn't guilty of something, why would he say I've got a lawyer.

PROSECUTOR: No, Judge, that is not . . .

COURT: That's exactly how I took it, and I think that's exactly how the jury took it.

PROSECUTOR: Judge, I was talking about the timing.

COURT: Let me talk, okay? So at this point and time [sic], again this has all been without objection, I don't know what to do at this point. I don't know whether to tell the jury about that or not tell the jury about it. But I'm going to tell you we're going to bring the jury back out and proceed, and I don't want any more mention at all about Mr. Johnson at any point saying, "I've got a lawyer, I want a lawyer," or anything that goes close to it, period.

*Id.* at 529–31. Defense counsel then requested that the trial court admonish the jury, and the trial court granted that request, stating:

There is a matter that I want to deal with . . . before we continue with Ms. Cressy's closing portion of the final argument. . . . In this trial there have been several mentions of Mr. Johnson having or maybe wanting a lawyer, I'm not going to characterize that evidence to you, that's going to be up to you. But I want to tell you that in our system anyone who is being subjected to any kind of police inquiry has a constitutional right, not only under the United States Constitution, but also the Indiana Constitution, to have a lawyer. As a matter of fact, if a person asserts that right in the face of police questioning, the police are required to immediately cease questioning and cannot reinstate any questioning whatsoever, unless the person contacts the police. And there are a lot of ups and downs about that. But I guess what I want to say is that you remember . . . let me sort of give you an analogy.

You will remember in voir dire when we talked about a defendant having a right to testify or a right not to testify. I think what I said is that when a defendant elects to testify in a case, that you cannot look upon that testimony any differently, just because that person is the defendant. And likewise, I think I said that where a defendant elects not to testify, you cannot in any way consider that fact in determining whether that person is guilty or not guilty. You can't go to the jury room and say, "Gee, you know, I wonder why he didn't testify. He must be hiding something, therefore he must be guilty." That's impermissible under the law of this State and of this country. The same thing applies with respect to wanting an attorney. So I'm telling you that the comments about Mr. Johnson either having an attorney or wanting an attorney, however you recall those to be, cannot in any way be considered by you in determining whether Mr. Johnson is guilty of this offense. Does everyone understand? [All jurors indicate affirmatively]. Is there anyone who feels you couldn't do that at this point and time? [All jurors indicate negatively].

*Id.* at 533–34. Johnson did not move for a mistrial following the trial court's admonition to the jury.

Again, on appeal, Johnson contends that the Prosecutor committed a *Doyle* violation by repeatedly making reference to Johnson's invocation of his right to an attorney. And Johnson maintains that the *Doyle* violation constitutes fundamental error. While we agree with Johnson that

the Prosecutor crossed the line and violated *Doyle, see, e.g., Bevis v. State,* 614 N.E.2d 599, 602 (Ind.Ct.App.1993), our analysis does not end there.

First, the trial court carefully admonished the jury that it should not consider Johnson's invocation of his right to an attorney in considering Johnson's guilt or innocence. And where the trial court adequately admonishes the jury, such admonishment is presumed to cure any error that may have occurred. *Harris v. State,* 272 Ind. 210, 396 N.E.2d 674, 676 (1979).

Second, *Doyle* violations are subject to a harmless error analysis. In *Bieghler v. State,* 481 N.E.2d 78, 92 (Ind. 1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), our Supreme Court set out a five-part test to determine whether a *Doyle* violation is harmless: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

Here, while three of the elements of the *Bieghler* test would mitigate against finding harmless error,[2] the other two elements are satisfied and weigh heavily towards holding the error to be harmless. In particular, the quantum of evidence of Johnson's guilt is substantial. Two police officers testified that they approached Johnson after they had heard gunfire in the area, and the officers identified John-

son as the man who pointed a handgun at Corporal Brick. The officers testified that the area was well-lit when they saw Johnson, and they saw that he was holding a silver, semi-automatic handgun. In addition, at trial, the trial judge admonished the jury that it was prohibited from considering Johnson's invocation of his right to an attorney in determining his guilt or innocence. That admonishment was thoughtful, thorough, and carefully designed to cure the *Doyle* violation, and each juror both acknowledged understanding the admonishment and indicated that the illegal statements would in no way influence the deliberations. The error was harmless.

### Issue Two: Effective Assistance of Counsel

Next, Johnson contends that he was denied the effective assistance of trial counsel when his counsel did not object to the Prosecutor's multiple references to his invocation of his right to an attorney. There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the defendant to overcome that presumption. *Gibson v. State,* 709 N.E.2d 11, 13 (Ind.Ct.App.1999), *trans. denied.* To make a successful ineffective assistance claim, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness as determined by prevailing professional norms; and (2) the lack of reasonable representation prejudiced him. *Mays v. State,* 719 N.E.2d 1263, 1265 (Ind.Ct. App.1999) (citing *Strickland v. Washing-*

---

2. As the trial court acknowledged during the side bar conference, the Prosecutor's frequent use of the reference to Johnson's post-arrest invocation of his right to an attorney was egregious. Hence, parts (1), (2), and (4) weigh against finding harmless error. Given the substantial evidence of Johnson's guilt and the trial court's thorough admonishment to the jury, however, we hold that the error was harmless.

*ton,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *trans. denied.* Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *See Steele v. State,* 536 N.E.2d 292, 293 (Ind.1989).

Here, we agree that Johnson's trial counsel's performance fell below an objective standard of reasonableness. Nonetheless, because the *Doyle* violation was harmless error, even if defense counsel had objected to the references, the result of the trial would not have been different. *See Johnson v. State,* 674 N.E.2d 180, 184 (Ind.Ct.App.1996), *trans. denied.* Johnson

cannot show prejudice and, thus, fails the second prong of the ineffective assistance of counsel test. *See id.* Johnson cannot prevail on this issue.

Affirmed.

BAKER, C.J., and KIRSCH, J., concur.