## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph T. Ford, III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 18, 2015

Court of Appeals Case No.
84A05-1501-CR-35

Appeal from the Vigo Superior Court

The Honorable Michael J. Lewis, Judge

Trial Court Cause No.
84D06-1309-FA-2760

**Crone, Judge.**

# Case Summary

[1] Joseph T. Ford, III, appeals his conviction for class A felony child molesting. He argues that the trial court erred in denying his motion for mistrial based on juror misconduct, that the prosecutor committed numerous instances of misconduct that resulted in reversible error, and that the evidence was insufficient to show that the child molesting occurred within the dates alleged in the charging information. We conclude that because Ford agreed to have the juror excused in lieu of a mistrial, any error in the trial court's denial of his motion for mistrial was invited and therefore not subject to reversal. We reject Ford's allegations that the prosecutor committed misconduct during opening argument and the State's case-in-chief. Although we agree with Ford that the prosecutor did make improper statements in his closing argument, we conclude that these do not result in reversible error. Finally, we conclude that the evidence is sufficient to support Ford's conviction. Therefore, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict show that T.A. was born on October 19, 1997. One summer, when T.A. was eight or nine years old, her father took her to a Seelyville trailer park to visit her grandmother. Ford, who was T.A.'s grandmother's boyfriend, was also at the trailer park. The trailer park had a swimming pool, and Ford was supposed to help T.A. change into her bathing suit. Ford and T.A. went to the back room of her grandmother's trailer. T.A. sat on the bed. Ford stood in front of her. He took off his pants and told T.A. to touch his penis. She refused. Ford took off T.A.'s pants. He leaned over her

and started rubbing her vagina.  Then, he put his finger in and out of her vagina.  Someone knocked on the door, and Ford stopped.  He helped T.A. put her bathing suit on.  As they left the room, Ford picked up T.A. and whispered to her not to tell.  After the incident, T.A. was never alone again with Ford.

[3]  T.A. did not tell anyone about the incident until September 2012 when she told her mother.  T.A. had delayed telling her mother because she did not think that her mother would believe her.  The State charged Ford with class A felony child molesting.  A jury found Ford guilty as charged.  He appeals.

## Discussion and Decision

## Section 1 – Any error in the trial court's denial of Ford's motion for mistrial was invited.

[4]  On the first day of trial, the jury was sworn in and instructed to "not enter into conversation with any of the attorneys or parties connected with the case or any witnesses" other than to "exchange ordinary greetings."  Voir Dire Tr. at 22-23.[1]  On the morning of the second day of trial, before court convened, Juror 3 approached Detective Sanford Scott, the State's assisting witness.  Juror 3 told Detective Scott that "the weather was bad this morning" and asked Detective Scott "where he should go," but Detective Scott told him that he "didn't know where he needed to go."  Tr. at 8.  Detective Scott motioned for Mark

---

[1]  The transcript consists of three volumes–one for pretrial hearings, one for voir dire, and one for trial–the pages of which are separately numbered.  This is contrary to Indiana Appellate Rule 28(A)(2), which requires that the transcript "shall be numbered consecutively regardless of the number of volumes."

Mullican, Ford's attorney, to come over. Detective Scott asked Mullican, "[W]ould you run anybody off the road today?" *Id*. at 9. Mullican walked away without responding. Juror 3 followed Detective Scott down the hallway a short distance and said that he did not know where to go. Detective Scott told him that he did not know where he was supposed to go, and they parted.

[5] As soon as trial began, Mullican informed the trial court that Juror 3 had spoken to Detective Scott, and Mullican requested permission to question Detective Scott regarding the conversation. Detective Scott was sworn in and questioned by Mullican. Detective Scott described the conversation set forth above. Mullican then requested that the trial court question Juror 3 to substantiate Detective Scott's account. The trial court questioned Juror 3 off the record and outside the presence of the parties. Afterward, the trial court informed the parties that Juror 3 confirmed "exactly" what Detective Scott had said they discussed and that Juror 3 confirmed that they did not discuss anything else. *Id*. at 13-14.

[6] Ford moved for a mistrial on the basis that the conversation between Juror 3 and Detective Scott could establish a rapport between a juror and a State's witness and that Mullican's refusal to engage in the conversation could be viewed negatively. The prosecutor argued that the conversation had no prejudicial impact and that there was no evidence that it had an impact on the rest of the jury, such that a mistrial amounted to "over kill," but that if Ford wanted to move to exclude that particular juror that would be a different issue. *Id*. at 19. Mullican responded, "And I would say I did miss state [sic] at this

stage of the proceeding I got a little ahead of myself[.] [I]t is not a mistrial[.] [I]t's a disqualification of the jury or the juror and [the prosecutor] would be correct on that." *Id.* at 20. The prosecutor said that he had no objection and that replacing the juror might cure any error. The trial court asked Mullican, "Do you want the juror excused?" *Id.* at 21. Mullican replied, "We have no choice, yes." *Id.* The trial court denied the motion for mistrial, removed Juror 3, and seated the alternate juror in his place. The jury was brought into the courtroom, and the trial court admonished the jury "not to speculate why, why [Juror 3] was excused, there were reasons that we can't discuss with you." *Id.* at 22.

[7] On appeal, Ford asserts that the trial court committed reversible error in denying his motion for mistrial. The State counters that Ford is not entitled to reversal on this issue because he invited any error. We agree with the State.

[8] Under the doctrine of invited error, "'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'" *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (quoting *Witte v. Mundy*, 820 N.E.2d 128, 133-34 (Ind. 2005)). "A defendant may not request a trial court to take an action and later claim on appeal that such action is erroneous." *Baugh v. State*, 933 N.E.2d 1277, 1280 (Ind. 2010). Here, Ford retreated from his initial request for a mistrial when he told the trial court that "it was not a mistrial" and that the prosecutor was correct that disqualification of the juror was the proper remedy. Tr. at 20. The trial court asked Ford if he wanted the juror excused, and he replied affirmatively. In

essence, Ford agreed to the disqualification of the juror in lieu of a mistrial. As such, he invited the alleged error of which he now complains, and he may not take advantage of it on appeal.

## Section 2 – Any prosecutorial misconduct did not result in reversible error.

Ford alleges that numerous instances of prosecutorial misconduct occurred throughout the trial.

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. To preserve a claim of prosecutorial misconduct, the defendant must–at the time the alleged misconduct occurs–request an admonishment to the jury, and if further relief is desired, move for a mistrial.

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (citations and quotation marks omitted).

Although Ford objected to some of the alleged misconduct, he did not move for an admonishment (with one exception that will be addressed below) or request

a mistrial and therefore did not properly preserve his claim. "Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error." *Id.*

> The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. The element of such harm is not established by the fact of ultimate conviction but rather depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury–including evidence admitted at trial, closing argument, and jury instructions–to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible.

> We stress that a finding of fundamental error essentially means that the trial judge erred by not acting when he or she should have. Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that

otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Id*. at 667-68 (footnotes, citations, quotation marks, brackets, and ellipses omitted).

[11]     In the prosecutor's opening statement, Ford alleges two instances of misconduct. An understanding of the specific charge against Ford is necessary to review Ford's allegations of misconduct. At the time Ford committed the offense, child molesting was defined as knowingly or intentionally performing or submitting to sexual intercourse or deviate sexual conduct with a child under the age of fourteen. Ind. Code § 35-42-4-3(a)(1). In his opening statement, the prosecutor explained that deviate sexual conduct consisted of the penetration of the sex organ of a person by an object and stated, "[I]t does not matter how far that penetration goes, it can be short, long any, any penetration." Tr. at 39. Ford argues that this statement was improper because the trial court did not instruct the jury on the meaning of penetration and the State had no evidence on that issue. We disagree. The jury was instructed that deviate sexual conduct is an act involving the penetration of the sex organ of a person by an object, Appellant's App. at 149, and the State's theory was that Ford had penetrated T.A.'s vagina with his finger and that is what she testified to. We conclude that this statement does not constitute misconduct.

[12]     Also during opening argument, the prosecutor stated, "[W]e don't have to prove the exact date and time [of the offense], you can use your common sense

to understand that [a] child of age eight or nine years old [doesn't] necessarily remember exact times." *Id*. at 44. Ford acknowledges that typically "time is not of the essence in the crime of child molesting," *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind. 1992), but argues that the prosecutor misstated the law because the State was required to prove that the offense occurred prior to T.A.'s fourteenth birthday. Time is of the essence in child molestation cases only where "the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Love v. State*, 761 N.E.2d 806, 809 (Ind. 2002). Here, the prosecutor specifically informed the jury that the evidence would show that the molestation occurred when T.A. was eight or nine years old. Tr. at 44. T.A. was not close to fourteen years old when Ford committed the offense. Given the circumstances of this case, we conclude that the prosecutor's statement regarding proof of the exact date and time of the offense did not constitute misconduct.

[13] Ford also contends that the prosecutor engaged in several instances of misconduct during the State's case-in-chief. Ford argues that during direct examination of T.A.'s mother, the prosecutor attempted to elicit hearsay evidence. The prosecutor asked T.A.'s mother about the timing of the molestation report she made in September 2012. He asked her whether she had been "made aware of the subject of this report that you made to the police department at any time prior to September" and whether she had "any reason to make a report any sooner than September." *Id*. at 77-78. Neither question required more than a yes or no answer. We simply disagree with Ford that the

prosecutor was attempting to elicit hearsay evidence.[2] Ford also complains that the prosecutor asked T.A.'s mother whether she had been "made aware" that T.A. had been at the trailer park in Seelyville. *Id*. at 79. Again, the question could have been answered yes or no and did not require a response that included hearsay.

[14] Ford also asserts that the prosecutor committed misconduct during his direct examination of T.A. when he asked her whether she understood that she was required to tell the truth and whether she could distinguish the truth from something that was not true. *Id*. at 87. Ford contends that these two questions amount to vouching for the witness's credibility. *See Gaby v. State*, 949 N.E.2d 870, 880 (Ind. Ct. App. 2011) ("It is inappropriate for a prosecutor to make an argument which takes the form of personally vouching for a witness."). Our review of the record shows that because T.A. was a minor, the prosecutor believed he had to establish her competency to testify. Tr. at 87-88. Indiana Evidence Rule 601 provides that "every person is competent to be a witness except as otherwise provided in these rules or by statute." Nevertheless, we conclude that the prosecutor was not deliberately attempting to bolster T.A.'s credibility and that these questions do not constitute misconduct.

[15] Lastly, Ford contends that the prosecutor committed misconduct during his closing rebuttal argument. The prosecutor stated, "There's lots [of] evidence in

---

[2] Hearsay is a statement that "(1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c).

a case like this that we can't possibl[y] produce and it[']s [a] really good defense trick [to argue that] you gotta go produce things when you can[']t produce them." *Id.* at 188. Ford objected, and the trial court sustained his objection. The prosecutor also stated, "[Defense counsel] said this is a serious case. I agree with him, it is a very serious case. These are very, very, very serious cases. They cause children to have a major problem in their lives[.] [Y]ou all know that." *Id.* at 189. Ford objected and moved for an admonishment. The trial court sustained his objection and admonished the jury to disregard the statement about children having issues. Additionally, the prosecutor argued, "I'm a big fan of the [E]agles and Don Headly [sic] who's wrote [sic] songs for the eagle's [sic] and he's got a song called the end of innocence um, that he wrote um and performed and this is the end of innocence that's eight, nine years old of a young child like T.A." *Id.* at 193. Ford objected, and the trial court sustained the objection.

[16] We agree with Ford that these three statements were improper. "As part of its closing argument, the State may argue both law and fact, and 'propound conclusions based upon his analysis of the evidence.'" *Deaton v. State*, 999 N.E.2d 452, 455 (Ind. Ct. App. 2013) (quoting *Poling v. State*, 938 N.E.2d 1212, 1217 (Ind. Ct. App. 2010)), *trans. denied* (2014). However, "'[i]t is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt.'" *Coleman v. State*, 750 N.E.2d 370, 375 (Ind. 2001) (quoting *Wisehart v. State*, 693 N.E.2d 23, 59 (Ind. 1998)). Here, identifying defense counsel's argument as a defense trick was improper because it was "inconsistent

with the requirements that lawyers 'demonstrate respect for the legal system and for those who serve it, including ... other lawyers.'" *Ryan*, 9 N.E.3d at 670 (quoting Preamble [5], Ind. Professional Conduct Rules). The prosecutor's reference to children experiencing major problems was improper because there was no evidence that T.A. suffered any problems. *See Neville v. State*, 976 N.E.2d 1252, 1263 (Ind. Ct. App. 2012) ("Prosecutors may not argue facts not in evidence."). Finally, the prosecutor's statement regarding the end of innocence was improper because it had no bearing on Ford's guilt or innocence and was made solely to kindle the sympathy of the jurors. *See Limp v. State*, 431 N.E.2d 784, 788 (Ind.1982) (concluding that prosecutor's statements regarding psychological damage done to victim and whether she would ever recover "had no bearing on defendant's guilt or innocence" and were improper); *Thornton v. State*, 25 N.E.3d 800, 806 (Ind. Ct. App. 2015) ("It is improper for a prosecutor to invoke sympathy for a victim as a basis for a conviction.").

[17] Nevertheless, we cannot conclude that any of these statements constitute reversible error. Regarding the prosecutor's comment about children having major problems, Ford objected and requested an admonishment. The trial court sustained the objection and admonished the jury. Ford does not argue that the admonishment was inadequate. "Where the trial court adequately admonishes the jury, such admonishment is presumed to cure any error that may have occurred." *Johnson v. State*, 901 N.E.2d 1168, 1173 (Ind. Ct. App. 2009). As for the other two comments, Ford did not request an admonishment. We cannot say that the brief references to a defense trick or the end of

innocence were so egregious as to make a fair trial impossible and therefore do not constitute fundamental error. Accordingly, we conclude that the prosecutor's misconduct does not require reversal.

## Section 3 – The evidence was sufficient to sustain Ford's conviction for child molesting.

[18] Finally, Ford asserts that his conviction for child molesting must be reversed due to insufficient evidence. Our standard of review is well settled:

> [When] reviewing the sufficiency of the evidence needed to support a criminal conviction[,] ... we neither reweigh evidence nor judge witness credibility. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.

*Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (citations omitted).

[19] The State charged Ford with committing class A felony child molesting "on or about June 1, 2007 and through and including August 15, 2007." Appellant's App. at 24. Ford's sole challenge to the sufficiency of the evidence is that the State failed to produce any evidence that he committed the offense between June 1 and August 15, 2007. He argues that to the extent any offense occurred, the evidence establishes that it was committed when T.A. was eight years old, and she was eight years old from October 19, 2005 to October 28, 2006.

[20] As discussed above, time is of the essence in child molestation cases only where "the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Love*, 761 N.E.2d at 809. T.A.'s age was not near the dividing line between classes of felonies, so time was not of the essence in this case. "Where time is not of the essence of the offense, … the State is not confined to proving the commission on the date alleged in the affidavit or indictment, but may prove the commission at any time within the statutory period of limitations." *Id.* (citing *Quillen v. State*, 271 Ind. 251, 252, 391 N.E.2d 817, 818-19 (1979)).[3] In *Love*, our supreme court held that the State's typographical error in the dates within which the defendant was alleged to have committed child molesting did not prejudice the defendant because time was not of the essence of the offense. *Id.*

[21] Time was not of the essence in this case. The State presented sufficient evidence that the molestation occurred well before T.A.'s fourteenth birthday. The State's theory was that the molestation occurred when T.A. was eight or nine, and the evidence was sufficient to support that. Ford's argument that the evidence showed that T.A. was eight and not nine years old may be construed as one of variance with the charging information. Assuming, without deciding, that there was a variance in the evidence from the charging information, Ford does not explain how he was prejudiced. "'A variance is an essential difference

---

[3] A prosecution for a class A felony may be commenced at any time. Ind. Code § 35-41-4-2(c).

between proof and pleading.'" *Neff v. State*, 915 N.E.2d 1026, 1031 (Ind. Ct. App. 2009) (quoting *Reinhardt v. State*, 881 N.E.2d 15, 17 (Ind. Ct. App. 2008)), *trans. denied* (2010). "A variance is fatal if the defendant is misled by the charge in the preparation and maintenance of his or her defense, and he or she was harmed or prejudiced as a result." *Id*. Ford was not misled in the preparation and maintenance of his defense or otherwise prejudiced. We conclude that there was sufficient evidence to support his conviction and therefore affirm.

[22] Affirmed.

Baker, J., and Bailey, J., concur.