## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2018, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ryan P. Dillon
Maritza K. Webb
Dillon Legal Group, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenton B. Myers,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 26, 2018

Court of Appeals Case No.
55A01-1709-CR-2157

Appeal from the Morgan Superior Court

The Honorable Brian H. Williams, Judge

Trial Court Cause No.
55D02-1507-F4-1071

**Najam, Judge.**

# Statement of the Case

Kenton Myers appeals his convictions following a jury trial for burglary, as a Level 4 felony; resisting law enforcement, as a Level 6 felony; and resisting law enforcement, as a Class A misdemeanor. Myers presents the following issues for our review:

1.  Whether the trial court abused its discretion when it denied his motion for a mistrial.

2.  Whether the jury's verdicts are fatally inconsistent.

3.  Whether the State presented sufficient evidence to support his burglary conviction.

We affirm.

# Facts and Procedural History

On July 13, 2015, at approximately 5:00 a.m., Myers broke and entered the attached garage of Timothy Dunbar's residence in Martinsville. Once inside, Myers found Dunbar's 1965 Chevrolet truck, which Myers then stole. Dunbar was asleep inside his house and awoke to the sound of the truck engine starting. Dunbar watched through a window as Myers drove the truck down the driveway, struck a vehicle parked there, veered into the yard, and then drove away. Dunbar called law enforcement to report the incident.

Morgan County Sheriff's Deputy Jeremy Long arrived at Dunbar's house, and Dunbar showed him damage to the garage door, which was the result of Myers'

backing out of the garage; damage to the parked vehicle in the driveway; and tire tracks in the lawn. Deputy Long then drove around the area to see whether the burglar had abandoned the truck, and he quickly found it parked at the edge of a nearby cornfield.

[4] In the meantime, Deputy Walter Stuart responded to a report of a man riding a lawnmower on Bain Road. At approximately 6:20 a.m., Deputy Stuart found the man, later identified as Myers, and tried to initiate a traffic stop by turning on his lights and siren, but Myers continued to drive the lawnmower for approximately one mile before he stopped in a ditch, dismounted the lawnmower, and "took off running over a gate into a field." Tr. Vol. II at 200. Deputy Stuart pursued Myers on foot for approximately one-quarter of a mile before Myers "ran out of energy" and stopped. *Id.* at 203.

[5] Deputy Stuart then

> ordered [Myers] to the ground several times. He was acting real erratic [sic], and just wasn't making much sense, and [Deputy Stuart and Myers] kind of stood off facing each other. [Deputy Stuart] had [his] taser out. [He] ordered him to the ground several times. [Myers] wouldn't go to the ground. He told [Deputy Stuart that] he wasn't going to go to the ground. [Myers] lunged at [Deputy Stuart]. That's when [Deputy Stuart] tased him and put him to the ground.

*Id.* At that point, Deputy Stuart placed Myers in handcuffs, and he led Myers to his vehicle. Deputy Long arrived to assist in the arrest, and Deputy Long conducted a pat-down search of Myers' person. In the course of that search,

Deputy Long found in Myers' pocket a gas cap and a set of keys with an address tag attached to it. Myers told the deputies that he had "t[aken the] lawnmower from a yard because he was tired of walking." *Id.* at 172. Dunbar subsequently identified the gas cap as having been removed from his truck, and he identified the set of keys as belonging to him.

[6]    The State charged Myers with burglary, as a Level 4 felony; auto theft, as a Level 6 felony; resisting law enforcement, as a Level 6 felony; and resisting law enforcement, as a Class A misdemeanor. Prior to trial, the trial court granted Myers' motion in limine, which, among other things, prohibited the State from referring to the lawnmower that Myers was driving just prior to his arrest as "stolen." *Id.* at 8. Nonetheless, during his opening statement at the ensuing jury trial, the prosecutor stated as follows:

> And then this guy steals [Dunbar's] truck, drives it through the back roads, blows the engine up so that it's stuck on the side of the road, and then takes off on a riding lawn mower. Now, Mr. Myers, when he's apprehended by the police, denied stealing the truck. *He did admit that he'd stolen the lawn tractor.* He said that he'd been walking and walking and walking, and just got tired, so he walked up into a yard and drove off with the lawnmower. That's what he told the police.

*Id.* at 118 (emphasis added). At the conclusion of that argument, defense counsel requested a sidebar to object to the prosecutor's reference to the stolen lawnmower, and defense counsel moved for a mistrial. The prosecutor acknowledged the error, but stated that he would introduce testimony that Myers "said that he took the lawn tractor." *Id.* at 119. The trial court stated

that it wanted to "ponder this a little bit," and defense counsel proceeded with his opening argument. *Id.*

[7]     At the conclusion of defense counsel's opening argument, the trial court excused the jury, and the following colloquy ensued:

> Defense counsel: Your Honor, we had a hearing before trial started specifically delineating that evidence about the lawn mower would not be coming in about the word stolen or talking about where it was returned to, based on the fact that the State had not actually disclosed the witness who they've now identified as, you know . . . I would ask the Court at this point, based on the direct knowing and intentional violation of your order to at least admonish the jury, but I don't believe it's enough, I ask for a mistrial charged to the State.
>
> State: Judge, I apologize for using the word, the magic word stolen, in the heat of the moment. The fact of the matter is is that my understanding, and I guess I was wrong, but my understanding of the Court's ruling was that we weren't supposed to go into anything that suggested a particular victim that the lawnmower was stolen from. It was a bad choice of words, I'll concede that. But, I didn't talk about how close it was to where the vehicle was ditched, literally ditched. And my reference to it being stolen was simply a paraphrasing from what Mr. Myers actually said at the scene. But it was a poor choice of words, and I apologize. If the Court wants to admonish the jurors, that there is not any evidence and will not be any evidence that the thing was actually stolen, I'm fine with that.
>
> Court: Well this is frustrating. We have a pretrial motion, you know, this very same day, we have a discussion, you get your say so, didn't really contest about using that word, and then you turn right around and do it. And you can say it's the heat of the moment, but you're a seasoned, decades professional at this.

And we shouldn't be having these kinds of things pop up because you get riled up. You know. You ought to be the cool hand Luke in the room on all of this at this point in time. I don't think it rises to the level of a mistrial. I'm curious what you do to admonish the jury without getting into the Streisand effect of pulling it out at this point. In some ways, it's not that big of deal. I'm going to find an admonishment that I think works and we'll present that to the jury before the commencement of evidence. The Motion for a Mistrial is denied. I don't think that given the fact the evidence is going to be that he's going to be described as stating that he took it out of someone's yard, I think the event is part of the res gestae of the case. Characterizing and highlighting it as yet another crime that was committed is improper. And I don't think that it rises to the level of a mistrial. But the State is warned that you need to be very factual about what happened, rather than characterizing that act when you can be talking about the charged offenses.

State: Understood.

*Id.* at 122-24. Then, before the State presented its first witness, the following colloquy occurred:

Court: I have provided the copy of the admonishment that I intend to give to the jury to both sides. Without waiving your objection, are you requesting any changes to that?

Defense counsel: Judge, I have no improvements to offer to it.

Court: Okay. Do you wish to renew your Motion?

Defense counsel: We do. I have to object to it in the grounds as not sufficient at this point. I just . . . I don't think this bell can be unrung. It's loud and clear, Liberty Bell ringing out from Philadelphia, so . . . .

Court: Well, I think the bell was already rung, because the evidence of this was going to going to come in as part of the res gestae of the case. I don't appreciate the State highlighting it to the extent one could then argue that it's creating evidence of another crime or wrong with the inference being that if one thing was stolen, another thing must have been. But, to me, the problem is the State highlighting it, and that was a very minor describing what it was in layman's terms. I think the instruction is cured of . . . sufficient that a Jury can disregard the forbidden inference, so . . . .

Defense counsel: I just move . . . renew the Motion for a Mistrial, or alternatively move to continue.

Court: All right, well, those will both be denied. I don't see any benefit to the continuance at this point. We're now to the evidentiary portion of the trial. Before that commences, the Court would like to admonish the Jury as follows:

[T]he State of Indiana, in its opening statement, referred to the defendant as having stolen a lawnmower described in his possession at the time that he encountered the sheriff's deputy. This infers a legal conclusion that does not and will not exist in this case. While the evidence regarding the defendant's actions and statements will be a part of this case for your consideration, you may not speculate as to the possible existence of unpresented surrounding facts, or the possibility of other uncharged and unproven allegations. You may not rely on or consider this possibility in any way in determining whether the State has proven the crimes charged in this case.

*Id.* at 125-27.

[8] At the conclusion of trial, the jury found Myers guilty of burglary, as a Level 4 felony; resisting law enforcement, as a Level 6 felony; and resisting law

enforcement, as a Class A misdemeanor. The jury acquitted Myers of auto theft. The trial court entered judgment of conviction accordingly and sentenced Myers to an aggregate sentence of eight years executed. This appeal ensued.

# Discussion and Decision

### *Issue One: Mistrial*

[9] Myers first contends that the trial court abused its discretion when it denied his motion for a mistrial. "Because the trial court is best positioned to assess the circumstances of an error and its probable impact on the jury, '[t]he denial of a mistrial lies within the sound discretion of the trial court,' and this Court reviews only for abuse of that discretion." *Lucio v. State*, 907 N.E.2d 1008, 1010 (Ind. 2009) (quoting *Gill v. State*, 730 N.E.2d 709, 712 (Ind. 2000)). "The overriding concern is whether the defendant 'was so prejudiced that he was placed in a position of grave peril.'" *Id.* (quoting *Gill*, 730 N.E.2d at 712)). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001) (internal citations omitted).

[10] Myers maintains that the prosecutor committed prosecutorial misconduct when he referred to the "stolen" lawnmower during his opening argument. Myers asserts that, "[n]ot only did this violate the verbal limine order, but it was a blatant violation of Ind. Evidence Rule 404(b)." Appellant's Br. at 12. Myers is correct that the trial court had granted the motion in limine and prohibited the prosecutor from describing the lawnmower as "stolen." Tr. Vol. II at 8. But

the court did not prohibit the prosecutor from presenting Deputy Long's testimony that Myers told the deputies that he "*took* a lawnmower from a yard because he was tired of walking." *Id.* at 172 (emphasis added). Indeed, Myers made no objection either to that testimony from Deputy Long or to Deputy Stuart's testimony that Myers "took" the lawnmower from someone's yard. *Id.* at 207. Given that the clear inference of the deputies' testimony is that Myers *stole* the lawnmower, Myers cannot show that the prosecutor's limine violation placed him in a position of grave peril. As the trial court observed when it denied the mistrial motion, "I don't think that given the fact the evidence is going to be that he's going to be described as stating that he took [the lawnmower] out of someone's yard, I think the event is part of the res gestae of the case." *Id.* at 123.

[11] Further, it is well settled that, "where the trial court adequately admonishes the jury, such admonishment is presumed to cure any error that may have occurred." *Johnson v. State*, 901 N.E.2d 1168, 1173 (Ind. Ct. App. 2009). Here, following defense counsel's opening argument, the trial court admonished the jury as follows:

> [T]he State of Indiana, in its opening statement, referred to the defendant as having stolen a lawnmower described in his possession at the time that he encountered the sheriff's deputy. This infers a legal conclusion that does not and will not exist in this case. While the evidence regarding the defendant's actions and statements will be a part of this case for your consideration, you may not speculate as to the possible existence of unpresented surrounding facts, or the possibility of other uncharged and unproven allegations. You may not rely on or consider this

possibility in any way in determining whether the State has proven the crimes charged in this case.

Tr. Vol. II at 126-27. And, both during voir dire and in the preliminary instructions, the trial court instructed the jury that arguments made by counsel are not evidence. We hold that the trial court did not abuse its discretion when it denied Myers' motion for a mistrial.

### Issue Two: Verdicts

[12] Myers next contends that, because the jury acquitted him of auto theft but convicted him of burglary, the verdicts are fatally inconsistent. In particular, Myers points out that, in order to prove burglary, the State was required to prove that Myers broke and entered the Dunbars' garage with the "intent to commit a felony or theft in it" by "exerting unauthorized control over the motor vehicle of Timothy Dunbar[.]" Appellant's Br. at 16. Myers maintains that the inconsistent verdicts indicate that "the jury disregarded or misunderstood their instruction as it relates to" the burglary charge. *Id.* at 18.

[13] However, as the State correctly points out, our Supreme Court has held that "[j]ury verdicts in criminal cases are *not* subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010) (emphasis added). In *Beattie*, a jury acquitted the defendant of possession of cocaine, but convicted her of possession of "the same cocaine" within 1,000 feet of a family housing complex. *Id.* at 644. On appeal, the defendant argued that her acquittal rendered her conviction based

on possession of the same cocaine "extremely contradictory." *Id.* at 645. But the Court explained as follows:

> When a jury returns logically inconsistent verdicts, such a result could mean that it misunderstood its instructions. But it is more likely that the jury chose to exercise lenity, refusing to find the defendant guilty of one or more additionally charged offenses, even if such charges were adequately proven by the evidence. Such right of a criminal jury to decline to convict is well recognized.

*Id.* at 648. And the Court concluded,

> even if we assume, arguendo, that the defendant's jury verdicts of not guilty of the lesser-included offense of Possession of Cocaine and guilty of Possession of Cocaine Within 1,000 Feet of a Family Housing Complex were inherently inconsistent, such verdicts are permissible and are insulated from review on this ground.

*Id.* at 649. Likewise here, assuming that the jury verdicts acquitting Myers of auto theft but convicting him of burglary were inherently inconsistent, they are not reviewable on appeal. *Id.*

[14] Further, to the extent Myers asks us to "consider the inconsistency [here] as a limited exception to the *Beattie* holding," we decline his invitation. Appellant's Br. at 18. In support of that request, Myers cites to *Marsh v. State*, 393 N.E.2d 757 (Ind. 1979), and *Owsley v. State*, 769 N.E.2d 181 (Ind. Ct. App. 2002), *trans. denied*. But in *Beattie*, the Court expressly "overrule[d] the standard advanced in *Marsh* and disapprove[d] of *Owsley*." 924 N.E.2d at 649.

## Issue Three:  Sufficiency of the Evidence

[15]  Finally, Myers contends that the State presented insufficient evidence to support his burglary conviction.  Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh the evidence.  *Id.*  We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[16]  To prove that Myers committed burglary, as a Level 4 felony, the State was required to show that Myers broke and entered Dunbar's dwelling with the intent to commit a felony therein.  *See* Ind. Code § 35-43-2-1 (2018).  Myers maintains that, while he was in possession of "relatively recent[ly]" stolen property, namely the gas cap and set of keys, there was no evidence that he broke into the garage.  Appellant's Br. at 20.  In particular, Myers asserts that "[t]here was no admitted evidence of an observation made that the [garage] door had been closed the night before," and there was otherwise no "visible signs of a break" into the garage.  *Id.* at 18, 20.  Myers also avers that there is no evidence that he was the person who stole the items from the garage.

[17]  First, it is well settled that, "[u]sing even the slightest force to gain unauthorized entry satisfies the breaking element of the crime" of burglary.  *Davis v. State*, 770

N.E.2d 319, 322 (Ind. 2002). "For example, opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking." *Id.* Here, the State presented evidence that Dunbar kept the garage door to his house closed every night and that, at the time of the burglary, a side door to the garage was closed, but may not have been locked. We hold that the State presented sufficient evidence to prove the breaking element of the burglary conviction.

[18] Second, to the extent Myers contends that he was not the person who burglarized Dunbar's garage, that contention amounts to a request that we reweigh the evidence, which we cannot do. Our Supreme Court has held that, while

> the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft[,] . . . such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away)."

*Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010). Further, it is well settled that evidence of flight may be considered as circumstantial evidence of consciousness of guilt. *Brown v. State*, 563 N.E.2d 103, 107 (Ind. 1990).

[19] Here, the State presented evidence that someone broke into Dunbar's garage at approximately 5:00 a.m., and at approximately 6:20 a.m., Deputy Stuart initiated a traffic stop of Myers in the vicinity of both Dunbar's house and the abandoned truck. Myers did not stop, but proceeded for another mile before

getting off of the lawnmower and leading Deputy Stuart on a foot chase. Once Myers was apprehended, Deputy Long found a gas cap from Dunbar's truck and a set of keys belonging to Dunbar in Myers' pocket. We hold that the State presented sufficient evidence to support Myers' burglary conviction.

[20] Affirmed.

Mathias, J., and Barnes, J., concur.