Walter C. MARSH, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 879S240.

Supreme Court of Indiana.

Aug. 31, 1979.

James K. Whitaker, Hammond, for appellant.

Theo. L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

This case is before us on the petition to transfer of defendant, Walter C. Marsh. Defendant was convicted by a jury of voluntary manslaughter, Ind.Code § 35–13–4–2 (Burns 1975), and was sentenced to two to twenty-one years' imprisonment. In a consolidated case in which defendant was charged with assault and battery with intent to kill, Ind.Code § 35–13–2–1 (Burns 1975), the same jury returned a verdict of not guilty by reason of insanity. The Court of Appeals, Third District, in *Marsh v. State,* (1979) Ind.App., 387 N.E.2d 1346, reversed the judgment of the trial court and granted defendant a new trial. The Court of Appeals held that the trial court erred in failing to admonish the jury after the prosecutor accused defendant, on cross-examination, of pleading and using insanity as a defense to avoid criminal responsibility as he had allegedly done in a prior criminal case, when in fact defendant had not pleaded not guilty by reason of insanity in that case and the case was never brought to trial. We find that the Court of Appeals committed error in reversing the judgment of the trial court and hereby grant transfer and affirm the trial court.

We now decide the following issues which defendant raised on his direct appeal to the Court of Appeals:

1. Whether the trial court erred in denying defendant's motion for mistrial or, in the alternative, failing to admonish the jury following the prosecutor's conduct on cross-examination outlined above;

2. Whether the verdicts of guilty of voluntary manslaughter and not guilty by reason of insanity of assault and battery with intent to kill are contradictory and therefore repugnant to law;

3. Whether the trial court erred in permitting physical exhibits and photographs to be taken to the jury room over objections of defendant; and

4. Whether the trial court erred in committing defendant to the Indiana Department of Correction "for assignment to the Maximum Security Division of Dr. Normab [sic] Beatty Memorial Hospital in Westville, Indiana, for psychiatric treatment . . ."

The facts of the case follow.

On December 19, 1975, at approximately 6:00 a. m., defendant entered the house of Clyde and Delpha Wilson through the kitchen door. Clyde Wilson was out-of-doors at that time. Defendant brushed past Delpha Wilson and proceeded upstairs. Clyde, with

a very grim look on his face, came into the house immediately behind defendant. Delpha called out to Leota Marsh, her daughter and defendant's estranged wife, that someone was coming upstairs. Delpha then proceeded upstairs. Defendant had joined Leota in the bathroom when the latter was preparing to go to work. Delpha heard defendant yell at Leota, "Remember me, I am the guy that loved you." Delpha heard two shots, one of which struck Leota in the neck. Clyde Wilson, then armed with a shotgun, tried to force open the bathroom door. He was attempting to pry open the door with the shotgun when two more shots came from within the bathroom. These shots struck Clyde in the right side and in the left eye. Delpha went downstairs to summon the police. When she returned upstairs, she heard defendant saying, "Are you dead yet, Leota, are you dead yet?" Police arrived on the scene shortly thereafter. One officer called to defendant who was still upstairs. Defendant started down the stairway, stopped about halfway down and advised the police that he was armed. An officer asked defendant to throw his gun downstairs and defendant complied with his request. The police told defendant to come downstairs with his hands behind his head. Defendant walked down the stairs and was arrested. Officer Richard McKinney testified as to what defendant had told him:

"[Defendant] said that I think you can help her, . . . I just grazed her, but the old man is in bad shape. I didn't mean to shoot him, but he stuck a shotgun through the door."

Clyde Wilson died of his wounds.

### I.

While cross-examining defendant, the prosecuting attorney posed the following question:

"Mr. Marsh, isn't it a fact that the only time you have sought psychiatric counseling or have used insanity as a defense are the two times criminal charges were brought against you, once in December of 1975 and another time in February of 1972, isn't that a fact, sir?"

Counsel for defendant objected and moved for a mistrial. He pointed out that defendant had not pleaded not guilty by reason of insanity to the prior criminal charge. In fact, this charge never went to trial. Counsel argued that this question was designed to prejudice the jury by discrediting defendant with regard to his insanity plea. On its face, the question implies that defendant only raised an insanity plea to avoid criminal responsibility. When the motion for mistrial was denied, defendant asked that the judge admonish the jury as to facts not in evidence. The trial judge refused this request as well.

The Court of Appeals held that it was reversible error for the trial court to refuse the admonishment. They cited the case of *Adler v. State,* (1961) 242 Ind. 9, 175 N.E.2d 358, where the prosecutor commented on final argument:

"This boy [appellant] has an organized gang like the ones in New York that attack people and two of them have already been sent to the reformatory." 242 Ind. at 11, 175 N.E.2d at 359.

The Supreme Court reversed, holding that:

"It is well settled that it is improper for counsel in argument to comment on matters not in evidence, and it is the duty of the trial court to see that they refrain from doing so. On proper objection from the defendant the court must at once require a retraction of any improper statement, or if necessary to insure that the defendant receive a fair trial, instruct the jury to disregard the statement." 242 Ind. at 12, 175 N.E.2d at 359.

We do not dispute the Court of Appeals' application of *Adler v. State, supra,* to the case at bar. However, we must question how defendant was harmed by the error at the trial court.

Since the trial court denied a motion for mistrial, we start with the proposition that in reviewing the denial of a motion for mistrial, this Court will not disturb the trial court's determination absent an abuse of discretion. *Hill v. State,* (1979) Ind., 390 N.E.2d 167; *Love v. State,* (1977)

Ind., 369 N.E.2d 1073. In order to convince the reviewing court that the trial court abused its discretion, the defendant must demonstrate that he was placed in a position of grave peril as a result of the improper remark. *Hill v. State, supra; Dewey v. State,* (1976) 264 Ind. 403, 345 N.E.2d 842. It follows that the failure to admonish the jury must similarly prejudice the defendant.

■ Normally when we must determine whether a defendant has been harmed or placed in grave peril, we must look at the entire record and weigh the impact of the improper remark or evidence because the jury's verdict of guilty standing alone is not informative on the issue. The instant case, however, provides more weighty evidence on the issue of harm or peril. In this consolidated case, the jury returned two verdicts. On the charge of murder in the first degree, the jury returned a verdict of guilty 'of voluntary manslaughter. On the charge of assault and battery with intent to kill, the jury returned a verdict of not guilty by reason of insanity. The second verdict indicates that the jury did not buy the inference that defendant was asserting an insanity defense, as he allegedly had done in the past, solely to avoid criminal responsibility. Therefore, it appears that the prosecutor's remark and the judge's failure to admonish the jury in no way harmed defendant.

This issue was the only one considered by the Court of Appeals. Since we have reached a different result, we now turn to defendant's other allegations of error.

## II.

Defendant claims that the two verdicts are inconsistent and, therefore, repugnant to law. The state argues that, under the law in Indiana, verdicts can be inconsistent.

"The better rule appears to be that declared by Mr. Justice Holmes in *Dunn v. United States,* 1932, 284 U.S. 390, [393], 52 S.Ct. 189, 190, 76 L.Ed. 356, [358–359], . . . where it was declared:

" 'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indict-

ment. * * * Where the offenses are separately charged in the counts of a single indictment the same rule must hold. * * *

" 'That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.' " *Flowers v. State,* (1943) 221 Ind. 448, 450, 48 N.E.2d 56, 57.

While the *Flowers* case has never been overruled, we note that this Court and the federal courts have consistently taken care to establish that verdicts are in fact not inconsistent. Indeed, even Justice Holmes wrote that the verdicts were not necessarily inconsistent in *Dunn v. United States, supra,* the case cited for the general rule. The United States Supreme Court reiterated the general rule in *United States v. Dotterweich,* (1943) 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48. But they took care to point out that the verdicts were not necessarily inconsistent in *Hoag v. New Jersey,* (1958) 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913. And in *Hamling v. United States,* (1974) 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, the Supreme Court cited both *Dunn, supra,* and *Dotterweich, supra,* but went on to say that the fact that the jury could not reach a verdict and a mistrial was declared with respect to one count when they found the defendant guilty on another count did not constitute an inconsistent finding by the jury.

One circuit court has established a hard line attitude toward the *Dunn* rule, holding:

"We need not reconcile rationally inconsistent verdicts, nor do inconsistent verdicts mandate reversal. [Citations omitted.] We need determine only whether there was sufficient evidence upon which the guilty verdict can be sustained." *United States v. McCall,* (9th Cir. 1979) 592 F.2d 1066, 1068.

Another circuit has hedged somewhat in following *Dunn,* stopping to point out that there was no inconsistency. *United States v. Mathis,* (7th Cir. 1978) 579 F.2d 415. But

other circuits have found distinguishing characteristics in cases which warrant reversal based on contradictory verdicts. The Fourth Circuit Court found contradictory verdicts warranted reversal in *United States v. Bethea,* (4th Cir. 1973) 483 F.2d 1024. In that case the elements of the three counts of which the defendant was convicted were of such a nature that a conviction on one count precluded conviction on either of the other two and vice versa. Judge Field, writing the opinion of the Court, distinguished the case from *Dunn,* pointing out that in *Dunn* logic dictated that the defendant was guilty of both of the offenses or neither. Judge Field noted that it was apparent that the jury in *Dunn* had found the defendant not guilty on one count in order to exercise a measure of lenity.

Another case, in which, as in *Dunn,* logic dictated that the defendant was guilty of both offenses or neither, resulted in reversal because of the inconsistent verdicts. *United States v. Hannah,* (3d Cir. 1978) 584 F.2d 27. The jury had found the defendant not guilty of conspiracy, but guilty of the underlying felony. The district court found that the acts constituting the underlying felony were the same acts constituting conspiracy and, therefore, the verdicts were inconsistent and the district judge entered *judgment n.o.v.* The government appealed arguing permissible inconsistent verdicts relying on the *Dunn* rule. The circuit court recognized that rule, however they said:

> "But the rule of these cases should not be applied unless the reason for the rule is also present." 584 F.2d at 30.

Emphasizing the interdependent nature of the two counts, the court affirmed the district court's *judgment n.o.v.*

This Court has treated the federal rule stated in *Dunn v. United States, supra,* in a similar manner. While never having reversed a case on the basis of inconsistent verdicts, this Court has consistently evinced concern over the possibility of inconsistent verdicts when faced with the issue by establishing that the verdicts are in fact not necessarily inconsistent. *Evans v. State,*

(1946) 224 Ind. 428, 68 N.E.2d 546; *Buckner v. State,* (1969) 252 Ind. 379, 248 N.E.2d 348; *Livingston v. State,* (1972) 257 Ind. 620, 277 N.E.2d 363; *Pulliam v. State,* (1976) 264 Ind. 381, 345 N.E.2d 229.

We therefore conclude that the better, and *de facto* rule is not a narrow interpretation of *Dunn v. United States, supra.* Rather this Court has looked and will continue to look at verdicts to determine if they are inconsistent. While perfectly logical verdicts should not be demanded, extremely contradictory and irreconcilable verdicts warrant corrective action by this Court.

With this approach in mind, we now turn to the facts in the instant case. Defendant shot Leota Marsh in the neck, for which he was found not guilty by reason of insanity. He then shot through the door and killed Clyde Wilson, for which he was found guilty of voluntary manslaughter. On both verdict forms, the jury foreman had written, "The jury recommends *extensive* psychiatric care." [Jury foreman's emphasis.]

The evidence regarding defendant's sanity was conflicting. Defendant's expert witnesses testified that defendant was legally insane at the time he committed the shootings and the court's expert witnesses testified that defendant was legally sane at the time of the shootings. The prosecutor attempted to distinguish between the two acts in his cross-examination of defendant's expert witnesses. The following is the relevant questioning of Dr. Guiterrez:

BY MR. WOLOSHANSKY:

Q. "Mr. Marsh indicated that at the time just prior to the shooting, his father-in-law, he observed his father-in-law pointing that very shotgun at him through the door and that he observed the hammer of the shotgun pulled back and I ask you once again, doctor, was his reaction to the shooting at his father-in-law rational or irrational reaction?"

A. "Again this is a very difficult question in answering because what you

are asking me is he—did he shoot him as a matter of self-defense?"

Q. "No, I am not, doctor. No, I am not asking you that. I am asking you whether the man did—under those circumstances reacted [sic] as you would or I would whom I consider to be reasonable and not insane people?"

A. "I think the two questions are different. I am not trying to evade you sir. I think it is a very rational act to try and protect yourself but in that circumstance a more rational person or person who has been or has better control of his emotions and conduct at that time would take other means of protecting himself."

Q. "I might agree with that. Nevertheless, the actions this man performed was it rational or irrational under the circumstances?"

A. "It is a rational act when you consider the amount of control that he had."

The prosecutor also questioned Dr. Speroff, defendant's other expert witness:

Q. "All right when that shotgun poked through the door and when Mr. Marsh reacted to the threat to him and he reacted by firing two shots in the direction of the shotgun, how do you explain that in terms of not being able to control his faculties? Did he not react rationally?"

A. "I don't believe so because I think as I recall his recounting the story, all he saw was the barrel of the gun. No idea where the holder of the gun was and he acted I think impulsively and without thinking."

Q. "Something controlled his actions, did it not?"

A. "No, I believe that is the whole point that he did not control his actions."

Q. "Was he not presented with a serious threat to his safety by the presence of the shotgun?"

A. "I can't testify to that."

Q. "Viewing the situation now, the knowledge that you have, did he not react to a threat to his person?"

A. "I believe he reacted but not in a responsible manner."

Q. "And was not inappropriate action was it?"

A. "It might not have been an inappropriate action but I don't think it was very rational behavior."

Q. "You say it was an irrational act?"

A. "It was not very rational."

Q. "Isn't it what we are really talking about that Mr. Marsh was making selective impairment of his faculties during this time, claiming selective impairment?"

A. "As best as I can determine from these facts, I elicited from Mr. Marsh and in view of my interpretation of the psychological tests, my opinion is that at the time that he committed this act he was not acting in full responsibility [sic] manner, not in a rational manner."

Q. "What was irresponsible about firing his weapon towards another weapon that was pointed towards him?"

A. "What is responsible about firing a gun at any time?"

Q. "What is irresponsible by it, sir?"

A. "All I can account for is the fact that I believe he acted on the basis of impulse, unthinkingly."

Both of defendant's expert witnesses stuck by their opinions on cross-examination. Nevertheless, the above questions and answers present a line of reasoning which the jury could have adopted in reaching the two verdicts in this case.

We cannot say with certainty what influenced the jury's verdicts. As we stated in *Flowers v. State, supra,* "verdicts cannot be upset by speculation or inquiry into [motivations of the jury]." 221 Ind. at 450, 48 N.E.2d at 57. Since there is some evidence of probative value in the record which establishes that the verdicts are consistent, we will not reverse.

## III.

■ Defendant asserts that the trial court erred in sending a shotgun, ten photographs and two sketches to the jury room. In *Thomas v. State,* (1972) 259 Ind. 537, 289 N.E.2d 508, this Court was faced with a similar challenge. We adopted the relevant portion of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice):

" '5.1  Materials to jury room.

" '(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been received in evidence, except depositions.

" '(b) Among the considerations which are appropriate in the exercise of this discretion are:

" '(i) whether the material will aid the jury in a proper consideration of the case;

" '(ii) whether any party will be unduly prejudiced by submission of the material; and

" '(iii) whether the material may be subjected to improper use by the jury.' " [Emphasis in original deleted.]  259 Ind. at 540, 289 N.E.2d at 509.

In the case at bar, the jury had asked for the shotgun and all photographs in evidence. Six of the photographs were state's exhibits and four were defendant's exhibits. At trial, defendant had objected only to the admission of three photographs of a police experiment showing the trajectory of the bullets which passed through the bathroom door and struck Clyde Wilson. Although the record contains unclear photocopies of the printed photographs, our review of these exhibits fails to show how the jury could misuse the evidence, how the defendant could be unduly prejudiced by the jury's review of the evidence or why the exhibits would not aid the jury. Therefore we find that the trial judge did not abuse his discretion in sending the aforementioned exhibits to the jury room.

## IV.

■ In pronouncing sentence, the trial court used the following language:

"IT IS THEREFORE CONSIDERED, ADJUDGED AND DECREED by the Court, upon the verdict of the Jury, that the Defendant, Walter C. Marsh, for the offense by him committed to-wit: Voluntary Manslaughter be, *and he is hereby committed to the Indiana Department of Corrections for assignment to the Maximum Security Division of Dr. Norman Beatty Memorial Hospital in Westville, Indiana, for psychiatric treatment for as long as the staff of that hospital determines the Defendant is in need of psychiatric treatment* and thereupon to the proper state institution for a period of not less than two (2) nor more than twenty-one (21) years from this date and pay the costs of this prosecution within thirty (30) days."  [Our emphasis.]

Defendant claims that this order erroneously makes a specific assignment to the Westville institution.

Given the verdict of not guilty by reason of insanity, it appears that the special assignment is not inappropriate. Nevertheless, the judge's recommendation is largely superfluous. Ind.Code § 35–8–3A–2 (Burns Supp. 1975) (Officially Ind.Code § 35–4.1–5–1) provides that the department of corrections shall designate the place of incarceration. It is reasonable to assume that the classification board of the Reception and Diagnostic Center will consider the judge's order; nevertheless, the formal recommendation as to the place and nature of incarceration is up to the classification board and the final decision is in the hands of the department of correction. Ind.Code § 11–3–6–10 (Burns 1973).

If the judge included more in his sentencing order than was necessary, we fail to see how defendant was in any way harmed thereby.

For all the foregoing reasons the judgment of the Court of Appeals is vacated and the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.