## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Oct 24 2017, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Coy Daniels
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Coy Daniels,

*Appellant-Petitioner,*

v.

State of Indiana

*Appellee-Respondent.*

October 24, 2017

Court of Appeals Case No.
49A04-1701-PC-60

Appeal from the Marion County
Superior Court.
The Honorable Kurt Eisgruber,
Judge.
The Honorable Steven Rubick,
Magistrate.
Trial Court Cause No.
49G01-0805-PC-106844

**Friedlander, Senior Judge**

[1]     Coy Daniels appeals the denial of his petition for post-conviction relief.  We

affirm.

[2]     The facts and procedural history of the case, as stated in Daniels' direct appeal, are as follows:

> On November 17, 2007, James Compton met with Daniels, Sam Fancher, Lawaine Smith, and Larry Neal. They were driving a dark blue Dodge Magnum, which Paul Jordan had rented and loaned to Daniels. Compton had previously seen Daniels and Jordan in the same vehicle. Daniels told Compton that he "had a lick," which means that he had a robbery or burglary he wanted to carry out. Tr. p. 87. Daniels asked Compton if he had any guns. During the conversation, Compton saw that Daniels had three 0.40 caliber Glocks and a "mini AKA" in the car. *Id.* at 90. Compton heard Lawaine talking to his father, Lanthern Smith, on the cell phone about the robbery and heard that Lanthern was supposed to open the door of the place to be robbed for them. Lawaine asked Lanthern if they had "any guns on them," and Lanthern responded that they did not. *Id.* at 92.

> Curtis Williams also saw Daniels, Neal, Fancher, and Lawaine in a dark-colored Magnum. Daniels was wearing a leather coat with fur around the collar and had a 0.40 caliber gun. Williams heard them say that they were waiting on Compton and saw Compton get in the Magnum.

> On the same day, Melvin Fitzgerald had agreed to host a dice game at his residence on West 10th Street in Indianapolis. Approximately nine men participated in the dice game, including Arnold Fitzgerald, Lanthern, and Terrance Williams. Arnold was Melvin's nephew and had lost his right eye. Melvin did not allow the participants to have weapons, and he patted everyone down. The dice game involved about $1,000 total. During the game, Melvin saw Lanthern talking on his cell phone. Shortly thereafter, Lanthern told Melvin that he needed to talk to him, and they went into Melvin's bedroom. Melvin heard a knock on the door and told Lanthern to answer the door. Melvin heard "a big commotion" and shooting, and everyone "scattered." *Id.* at 59-60. Participants in the dice game tried to hide or escape the residence.

Williams was playing dice with the other men when he heard a knock on the door. Lanthern answered the door, and Williams saw a man wearing a jacket with fur on it come into the house. The man was holding a gun, and Williams heard someone say, "freeze." State's Exhibit 66. Williams heard gun shots and was shot in the right hand. Everyone started running, and Williams, his brother, and Arnold ran toward the basement. Williams and his brother went into the basement, while Arnold tried to run out the back door. Williams later saw Arnold on the floor near the back door, and Arnold was not moving. Arnold died of a gunshot wound to his back that damaged his heart. A 0.40 caliber bullet was removed from his chest. Williams later identified Neal in a photo array as a person involved in the shooting.

Melvin's neighbor heard shots fired, called 911, saw a "black Magnum" sitting on 10th Street, and saw the vehicle drive away. Tr. p. 108.

Later that day, Compton heard Lawaine, Fancher, and Daniels arguing about who shot first. Fancher was making fun of Daniels for shooting into the basement. They also discussed the money they had taken.

The next day, Williams was at Fancher's residence with several other people. Fancher said, "guess what this motherf* * *er had us do?" *Id.* at 163. Pointing at Lawaine, Fancher said that Lawaine had them "run in the house with about 12 motherf* * *ers in there." *Id.* Fancher then said that Compton ran back to the car before they walked into the house. Fancher said that a "one-eyed dude kept on moving." *Id.* They said that Daniels was following men toward the basement, and Daniels said that he fired shots through the basement door. Daniels complained that he could not hear out of one of his ears due to the shooting. The men argued about which one of them shot first. They also said that they had picked up money off the floor at Melvin's house.

The State charged Daniels with murder, felony murder, robbery as a Class A felony, and battery as a Class C felony. His first jury trial ended in a mistrial. At his second trial, the jury found Daniels guilty as charged. The trial court sentenced him to an aggregate sentence of fifty-five years for murder, Class B felony robbery, and Class C felony battery.

*Daniels v. State*, No. 49A02-0912-CR-1277, *1-2 (Ind. Ct. App. Sept. 24, 2010) (footnote omitted), *trans. denied*. On appeal, Daniels claimed prosecutorial misconduct and challenged the sufficiency of the evidence. The Court affirmed the trial court's judgment.

[3] In 2011, Daniels filed a petition for post-conviction relief. The court referred the matter to the State Public Defender, who declined to represent Daniels. Daniels proceeded pro se and amended his petition with the court's permission in 2014 and again in 2015. An evidentiary hearing was scheduled for October 21, 2014, but on the day of the hearing neither Daniels' trial counsel nor his appellate attorney was available, so the court rescheduled the hearing. The court held an evidentiary hearing on August 25, 2015, at which Daniels represented himself. At the end of the hearing, the court agreed to schedule another hearing to consider additional evidence. Attorney Jonathan Gotkin filed an appearance on behalf of Daniels on October 21, 2015. Daniels, through Attorney Gotkin, amended the petition for a third time in 2016. The amended petition raised claims of ineffective assistance of trial counsel. The court held additional evidentiary hearings on November 17, 2015, and March 22, 2016. Gotkin represented Daniels at both hearings.

[4]     On November 3, 2016, the court issued findings of fact and conclusions of law denying Daniels' petition for post-conviction relief. The court rejected Daniels' claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. In the meantime, Daniels sent the court a pro se motion to withdraw his petition for post-conviction relief without prejudice and a motion to proceed pro se. On November 4, the court received Daniels' pro se motion to withdraw the petition and denied it as moot. On November 4 and again on November 6, Attorney Gotkin filed motions to withdraw his appearance. The court granted his request on November 7. Next, Daniels filed a pro se motion to correct error, which the court denied. This appeal followed.

[5]     Daniels raises six issues, which we consolidate and restate as:

1. Whether the trial court abused its discretion in denying Daniels' pro se motion to withdraw his petition for post-conviction relief without prejudice.

2. Whether the trial court abused its discretion in denying Daniels' request to issue a subpoena for Detective Charles Benner.

3. Whether the trial court abused its discretion in denying Daniels' request to admit certain documents into evidence during the evidentiary hearings.

4. Whether the post-conviction court erred in denying Daniels' petition for post-conviction relief.

5. Whether Daniels received ineffective assistance of post-conviction counsel.

# 1. Denial of Request to Withdraw Petition

[6] Daniels argues that his motion to withdraw his petition for post-conviction relief was timely filed under the prison mailbox rule and the post-conviction court erred by denying it as moot. He further argues the court erred by denying his motion to correct error on this point. The State responds that the court acted within its discretion.

[7] Indiana Post-Conviction Rule 1(4) provides:

> At any time prior to entry of judgment the court may grant leave to withdraw the petition. The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court.

[8] Rule 1(4) does not confer an absolute right to withdraw a petition for post-conviction relief. *Mitchell v. State*, 946 N.E.2d 640 (Ind. Ct. App. 2011), *trans. denied*. Whether to allow withdrawal of a petition is within the discretion of the trial court, and we review the court's decision for an abuse of that discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[9] It appears Daniels gave prison officials his motion to withdraw the petition for post-conviction relief before the court denied the petition on November 3, 2016. In any event, we cannot conclude the court's denial of the motion was against the logic and effect of the facts and circumstances. The court was not required to accept Daniels' pro se filing because he was still represented by counsel. *See*

*Jenkins v. State*, 809 N.E.2d 361 (Ind. Ct. App. 2004) (court not required to accept pro se motions from a party that is represented by counsel), *trans. denied*.

[10] In addition, the procedural history of the case demonstrated that further delay would have been unwarranted. Daniels' petition had been pending since 2011, and he had been permitted to amend it three times (twice pro se, once by counsel). The court had held an evidentiary hearing over three days, and permitting withdrawal of the petition would have nullified that expenditure of judicial resources. The court did not abuse its discretion in denying Daniels' request to withdraw the petition.

## 2. Denial of Request for Subpoena

[11] Daniels argues the trial court should have granted his request to subpoena Detective Charles Benner to testify, arguing Benner's testimony "was the only way to enter exhibits by proper foundation." Appellant's Br. p. 11. The State responds that Daniels has waived this issue by failing to provide cogent argument and citation to authority.

[12] Per Indiana Appellate Rule 46(A)(8)(a), the argument section of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." Failure to present cogent argument or to provide adequate citation to authority and portions of the record results in waiver. *Smith v. State*, 822 N.E.2d 193 (Ind. Ct. App. 2005), *trans. denied*. Here,

Daniels' argument on this issue consists of the sentence quoted above, a citation to the record, and a citation to a post-conviction rule. The argument is waived for failure to provide cogent argument and adequate citation to authority.

[13] Waiver notwithstanding, we find no error. A post-conviction court "shall" issue a subpoena if the court determines "the witness' testimony would be relevant and probative." Ind. Post-Conviction Rule 1(9). The court thus has discretion to determine whether to grant or deny the petitioner's request for a subpoena, and we review the decision for an abuse of discretion. *Pannell v. State*, 36 N.E.3d 477 (Ind. Ct. App. 2015), *trans. denied*.

[14] During the November 17, 2015 hearing, the post-conviction court explained that he had denied Daniels' request to subpoena Detective Benner "because the issues that he attempted to bring were not germane to this proceeding." PCR Tr. Vol. II, p. 61. Daniels had argued that Benner did not testify at the original trial, and in order to establish that his trial counsel failed to adequately investigate the case, Daniels needed Benner to explain what he would have testified to if he had been called at trial. Appellant's App. Vol. III, pp. 88-89. Daniels did not describe for the post-conviction court, and has not explained to this Court, the nature of Benner's expected testimony beyond unsupported speculation that Benner could authenticate exhibits. Thus, Daniels did not carry his burden of proving Benner's testimony would be relevant and probative, and the post-conviction court did not abuse its discretion in denying Daniels' request to subpoena Benner.

# 3. Refusal to Admit Exhibits into Evidence

[15] Daniels argues the post-conviction court erred by refusing to accept as evidence several affidavits and other documents he tendered to the court prior to the evidentiary hearings. His sole argument on this point in his opening brief is as follows: "The Post-Conviction Court converted a procedural technicality into a trap preventing the introduction of evidence by a pro-se petitioner when the court failed to ensure that the documents Daniels attempted to enter as evidence were entered." Appellant's Br. p. 11. Daniels then cites to a single case and to portions of the Appellant's Appendix. He does not discuss a standard of review, identify the specific evidentiary rulings he challenges, or explain which of his tendered exhibits are admissible and why. This claim is waived for failure to present cogent argument. *See Norris v. State*, 53 N.E.3d 512 (Ind. Ct. App. 2016) (defendant waived challenge to admission of hearsay evidence by failing to present specific argument).

[16] Waiver notwithstanding, we find no grounds for reversal. We review a court's decision to admit or exclude evidence for an abuse of discretion. *Montgomery v. State*, 21 N.E.3d 846 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. *Id.*

[17] On March 20, 2015, Daniels filed with the post-conviction court a Notice of Post-Conviction Relief Exhibits, asking the court to take judicial notice of

exhibits A through Z. The court indicated it had received the exhibits, but they would "have to be reviewed individually." Appellant's App. Vol. II, p. 20.

[18] During the August 25, 2015 hearing the post-conviction court agreed to take judicial notice of the documents in its file, including the abstract of judgment, charging information, the probable cause affidavit, and the chronological case summary, all of which were included in Daniels' packet of proposed exhibits. The court further agreed to take judicial notice of the Record on Appeal from Daniels' direct appeal. The court refused to take judicial notice of documents that were not part of the trial court record or the appellate court record, including transcripts or documents that were related to another defendant's case. Although a court "may judicially notice . . . records of a court of this state," Ind. Evidence Rule 201, the court is not obligated to do so.

[19] In addition to documents from other cases, Daniels' proposed exhibits included handwritten notes, photographic lineups, witness statements, what appears to be a 911 record, and Daniels' records from an interstate law enforcement database. He did not present testimony to authenticate any of those documents. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Evid. R. 901(a). In the absence of an evidentiary foundation, the trial court did not abuse its discretion by excluding those proposed exhibits. *See Reef v. Asset Acceptance, LLC*, 43 N.E.3d 652 (Ind. Ct. App. 2015) (trial court erred in admitting

financial records; records were neither self-authenticating nor authenticated by an affidavit or testimony).

## 4. Post-Conviction Judgment

Daniels challenges the post-conviction court's denial of his petition. His argument in his opening brief consists of one sentence, which he repeats in the summary of argument and argument sections, as follows:

> The Post Conviction Court's 11-3-2016, wholesale adoption of the state's 10-24-2016 Proposed Findings of Fact and Conclusions of Law must be reversed where the evidence unerringly and unmistakably leads to the opposite conclusion and contains numerous error and erroneous legal standard for prejudice.

Appellant's Br. pp. 9, 10. He then states in the argument section that he "relies entirely upon his arguments and attached evidence of the following" and provides citations to documents he filed with the post-conviction court, to the post-conviction transcript, and to the final judgment.

An appellate brief should be prepared so that each judge, considering the brief alone and independent of the transcript, can intelligently consider each question presented. *Pluard ex rel. Pluard v. Patients Comp. Fund*, 705 N.E.2d 1035 (Ind. Ct. App. 1999), *trans. denied*. Attempts to incorporate by reference arguments presented in trial court documents or during a trial court hearing do not comply with the Appellate Rules. *Id.* Daniels failed to present cogent argument on this issue in his opening brief, resulting in waiver.

[23] Waiver notwithstanding, Daniels' arguments, which we decipher as best we can from his appellate briefs, present no grounds for reversal. A post-conviction court's denial of relief will be affirmed unless the petitioner shows that the evidence leads unerringly and unmistakably to a decision opposite that reached by the trial court. *West v. State*, 938 N.E.2d 305 (Ind. Ct. App. 2010) (quotation omitted), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous. *Id.* In addition, we consider only the probative evidence and reasonable inferences therefrom that support the post-conviction court's determination, and we will not reweigh the evidence or judge witness credibility. *Id.*

[24] Daniels first argues the post-conviction court's findings of fact and conclusions thereon are erroneous because the court adopted the State's proposed findings wholesale. A court's verbatim adoption of proposed findings and conclusions may leave us with a lower level of confidence that the findings reflect the independent judgment of the court, but such findings and conclusions are not "inherently suspect." *Kitchell v. Franklin*, 26 N.E.3d 1050, 1058 (Ind. Ct. App. 2015), *trans. denied*.

[25] Next, Daniels argues the post-conviction court's findings and conclusions are erroneous because he concludes the court misstated the standard for determining ineffective assistance of counsel. Specifically, he argues the court did not correctly describe the prejudice element of the standard. We disagree. The court described the prejudice element of ineffective assistance as follows:

Second, the Defendant must show the deficient performance prejudiced the defense. [*Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind. 2003)]. Prejudice is proven by showing counsel's errors were so serious as to deprive the defendant of a fair trial, a failing so severe as to render the result unreliable. *Id*. In other words, the Defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would be different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Furthermore, the two prongs are separate and independent inquiries, and if a court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed." [*Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001)].

Appellant's App. Vol. VII, p. 72.

[26] The court's explanation of the prejudice standard follows established precedent, and we find no error. Daniels argues the court improperly altered the standard by stating that, with respect to Daniels' claim that trial counsel failed to adequately investigate his case, Daniels "wholly failed to produce evidence that trial counsel should have uncovered that would have resulted in his acquittal." *Id.* at 74. We consider the post-conviction court's statement as a commentary on the evidence presented in this case rather than an alteration of the well-established standard for ineffective assistance.

[27] Daniels next argues in his reply brief that the post-conviction court erred in rejecting his claims that his trial counsel rendered ineffective assistance by: (1) failing to adequately investigate the case; (2) failing to challenge the jury instructions on murder and felony murder; (3) failing to challenge the jury verdict forms; and (4) failing to argue Daniels' convictions for murder and

felony murder violated double jeopardy. Our standard of review for claims of ineffective assistance of counsel is as follows:

> To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. When considering a claim of ineffective assistance of counsel, we strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption.

*McKnight v. State*, 1 N.E.3d 193, 200 (Ind. Ct. App. 2013) (citations and quotations omitted).

[28]     Regarding Daniels' claim of failure to investigate, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). It is well settled that we should resist judging an attorney's performance with the benefit of hindsight. *Id.* Accordingly, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *Id.* at 201.

[29]  Daniels pointed to tendered exhibits that he said demonstrated his trial counsel had failed to investigate important leads, but the post-conviction court determined those exhibits were unsubstantiated. We agree. The post-conviction court further decided counsel properly acted within her professional judgment. During the March 22, 2016 post-conviction hearing, trial counsel Michelle Wall stated her strategy was to challenge the testimony of two of the State's main witnesses as "not credible enough to come to the level of guilty." Tr. Vol. II, p. 87. She investigated Daniels' alibi claim but ultimately chose not to present it. *Id.* at 90. The trial court did not err in declining to second-guess counsel's strategy.

[30]  Turning to the jury verdicts, Daniels argues his trial counsel should have challenged the jury verdicts for murder and felony murder because they allowed the jury to reach "inconsistent verdicts." Appellant's Reply Br. p. 7. In order to prevail on a claim of ineffective assistance due to counsel's failure to object, the petitioner must show a reasonable probability that the objection would have been sustained if made. *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013).

[31]  The post-conviction court correctly noted there was no inconsistency in this case, because the jury determined Daniels was guilty as charged. The post-conviction court thus did not err in rejecting Daniels' argument because the argument was based on a flawed factual premise. Daniels further claims the post-conviction court erred on this point because it cited a case, *Marsh v. State*, 271 Ind. 454, 393 N.E.2d 757 (1979), that was overruled by *Beattie v. State*, 924 N.E.2d 643 (Ind. 2010). The trial court's citation of *Marsh* does not undermine

the correctness of its factual analysis. Furthermore, *Beattie* does not help Daniels' case either because it is procedurally dissimilar. That case is distinguishable because it answered the question of whether a defendant may challenge allegedly inconsistent jury verdicts on direct appeal, not whether counsel should attempt to prevent inconsistent verdicts during trial. Daniels has failed to establish reversible error.

[32] Next, Daniels claims his trial counsel should have objected to the verdict forms because they did not distinguish between principal and accomplice liability. Daniels cites *Castillo v. State*, 974 N.E.2d 458 (Ind. 2012), for the general principle that imposing the same penalty upon an accomplice and a principal may not be appropriate. That case is distinguishable because it did not involve a challenge to jury verdict forms. Daniels has not cited, and we have not found, any cases holding that counsel must ask for verdict forms that require the jury to determine principal and accomplice liability. To the contrary, a panel of this Court stated that the use of special verdict forms to assign accomplice and principal liability was not required and was instead, at best, harmless error. *Batalis v. State*, 887 N.E.2d 106 (Ind. Ct. App. 2008), *trans. denied*. Daniels has failed to demonstrate that counsel would have prevailed in the trial court if she had objected to the jury verdict forms, and the post-conviction court did not err in rejecting this claim.

[33] Finally, Daniels argues his counsel should have objected to his convictions of murder and felony murder because the convictions violated his constitutional protections against double jeopardy, and merger of the convictions did not cure

the error.  Daniels is incorrect because the Indiana Supreme Court has held that there is no double jeopardy violation where a defendant is convicted of murder and felony murder if the trial court merges the convictions.  *Laux v. State*, 821 N.E.2d 816 (Ind. 2005).  Thus, counsel would not have prevailed if she had challenged the trial court's decision to merge the convictions.  Counsel cannot be deemed ineffective for choosing not to pursue a course of action that would have failed.  In summary, even if Daniels had not procedurally defaulted his challenge to the post-conviction court's judgment, none of his claims establish reversible error.

## 5. Ineffective Assistance of Post-Conviction Counsel

[34]     For his final allegation of error, Daniels argues Attorney Gotkin "in essence abandoned his client" during evidentiary hearings by failing to make an offer of proof and by failing to argue in favor of admitting evidence Daniels sought to present.  Appellant's Br. p. 9.  The State responds that Daniels' attorney did not act inappropriately.

[35]     Neither the Sixth Amendment nor article I, section 13 of the Indiana Constitution guarantee the right to counsel in post-conviction proceedings. *Graves v. State*, 823 N.E.2d 1193 (Ind. 2005).  Post-conviction proceedings are not criminal actions and need not be conducted under the standards followed by criminal actions.  *Id.*  As a result, when a petitioner claims ineffective assistance of post-conviction counsel, the key inquiry is whether "'counsel in fact appeared and represented the petitioner in a procedurally fair setting which

resulted in a judgment of the court.'" *Id.* at 1196 (quoting *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989)). Indiana's appellate courts have found post-conviction counsel to have rendered ineffective assistance when counsel effectively abandons his client and does not present any evidence in support of the petition. *See, e.g.*, *Waters v. State*, 574 N.E.2d 911 (Ind. 1991) (counsel offered no evidence, client was forced to prepare and submit affidavits on his own).

[36] In this case, Attorney Gotkin amended Daniels' pro se petition to refine his claims. Further, Gotkin appeared at two post-conviction evidentiary hearings, where he questioned witnesses and offered exhibits. He repeatedly offered Daniels' proposed exhibits as evidence, only to have the requests denied by the post-conviction court. Even then, Gotkin continued to question witnesses about those documents. Based on these facts, we cannot conclude Gotkin abandoned his client, and Daniels' claim of ineffective assistance of post-conviction counsel must fail.

[37] For the foregoing reasons, we affirm the judgment of the post-conviction court.

[38] Judgment affirmed.

Mathias, J., and Crone, J., concur.